[Civ. No. 19020.   First Dist., Div. One.   Aug. 1, 1960.]

AUGUST MARABUTO et al., Appellants, v. THE TOWN OF EMERYVILLE et al., Respondents.

*Assigned by Chairman of Judicial Council.

Carroll, Davis, Burdick & McDonough for Appellants.

William H. Quinn, Town Attorney, for Respondents.

PAULSEN, J. pro tem.*—Appellants, six firemen and two policemen, all civil service employees of the city of Emeryville, sought to enjoin the city council from discharging them because of their refusal to maintain residence in the city. The appeal is from the judgment refusing to grant the injunction.

Emeryville is a highly industrialized city about one and a half miles in length and about one mile in width. It is located in the congested area east of San Francisco Bay.

On July 7, 1936, pursuant to the authority granted to general law cities by sections 45000 et seq. of the Government Code, the voters of the city adopted Ordinance 266 which established a civil service system. Section 5 thereof reads: "The City Council shall formulate and adopt rules and regulations for the administration of said Civil Service System and subsequent amendments to said rules and regulations may be adopted by the City Council at any regular meeting. All rules and regulations adopted shall be consistent with the provisions of the ordinance. Such rules shall provide for the following matters in addition to such other matters as may be necessary and proper in carrying out the intent and purpose of this ordinance: (a) The classification of all persons in the Classified Service. (b) The selection, employment, advancement, suspension, demotion and discharge of all persons in the Classified Service. (c) The formulating of minimum standards and qualifications of each of the positions in the Classified Service."

The council adopted rules and all applicants were required to state that they had been residents of Emeryville for at least a year. Each of the appellants so stated. At that time there was nothing in the rules which specifically required employees to maintain such residence afterward, and some of them became residents of other East Bay cities.

On June 20, 1949, the council passed Resolution 2700 which required all civil service employees to maintain their residence

---

*Assigned by Chairman of Judicial Council.

in the city as a condition of continued employment. It reserved the right, in its discretion, to permit any employee to live outside the city and within 3 miles thereof in cases where continued residence in the city would cause extreme personal or financial hardship to the employee, or where it was necessary to preserve the health of the employee or that of his immediate family.

On August 11, 1958, the council adopted Resolution 3663 which recited that certain employees had become residents of other cities and required them to reestablish residence in Emeryville, not later than January 1, 1959, or be discharged. Before the resolution was passed each nonresident was given a hearing and a full opportunity to justify his conduct. All except appellants complied with the demand. Since the commencement of this action appellants Maloney, Griffith, Azevedo and Gorman have reestablished residence, and Marabuto, Cook, and Conway have resigned.

Section 36505 of the Government Code authorizes city councils to appoint a chief of police, a city attorney, a superintendent of streets, a civil engineer, and such other subordinate officers or employees as it deems necessary. Section 37113 of the same title provides that "In addition to other powers, a legislative body may perform all acts necessary or proper to carry out the provisions of this title."

Appellants admit that the city has the right to maintain fire and police departments but argues that when general law cities were authorized to establish civil service systems they were not given the power to require the employees to maintain residence in the city; that such being the case, the voters could not confer that power on the city council by enacting Ordinance 266; that even if such power could have been conferred it was not done and the adoption of Resolution 2700 was an attempt to amend Ordinance 266, although that ordinance prohibited amendment except by vote of the electors.

Appellants rely on the following statement in 1 Dillon on Municipal Corporations, fifth edition, section 237, approved in *Frisbee* v. *O'Connor*, 119 Cal.App. 601, 603 [7 P.2d 316] : " 'It is a general and undisputed proposition of law that a municipal corporation possesses and can exercise the following powers and no others: First, those granted in express words; second, those necessarily or fairly implied in or incident to the powers expressly granted; third, those essential to the accomplishment of the declared objects and purposes of the corporation—not simply convenient, but indispensable. Any

fair, reasonable, substantial doubt concerning the existence of power is resolved by the courts against the corporation, and the power is denied. Of every municipal corporation the charter or statute by which it is created is its organic act. Neither the corporation nor its officers can do any act, or make any contract, or incur any liability, not authorized thereby, or by some legislative act applicable thereto. All acts beyond the scope of the powers granted are void.' "

In our opinion the city had the power under the provisions of the Government Code to establish fire and police departments, and the electors had the power to confer upon the city council authority to formulate minimum standards and qualifications. Resolution 2700 was not such an amendment to Ordinance 266 as to require a vote of the electors but was in fact a rule prescribing a qualification. Section 45000 of the code reads: "It is the intent of this chapter to enable the legislative body of any city to adopt such a personnel system, merit system, or civil service system as is adaptable to the size and type of the city. The system may consist of the mere establishment of minimum standards of employment and qualifications for the various classes of employment, or of a comprehensive civil service system, as the legislative body determines for the best interest of the public service." It is well settled that where such power exists the municipality has the further power to employ such means as are necessary to effect the exercise of the power granted. (35 Cal.Jur.2d, Municipal Corporations, § 194.)

Appellants argue that residence can not be a qualification because it has "no reasonable relation to the ability of an employee to perform the duties . . ." Emeryville has small forces of firemen and police to cope with the hazards due to its concentrated industrial activities. The fire and police chiefs testified that, in emergencies, firemen and policemen could not be relied on for quick response when living at great distances from the city, and it is a matter of common knowledge that in such emergencies even a short delay may be fatal. Residence has generally been treated as a qualification. In *Dierssen* v. *Civil Service Commission of the City & County of San Francisco,* 43 Cal.App.2d 53 [110 P.2d 513], plaintiff sought a writ of mandate to force the civil service commission to place his name at the top of the eligible list. The commission refused on the ground that he had not been a resident for one year prior to taking the examination. At page 62 the court said: "The obvious intent of the sections as a whole is that

power has been conferred on the commission to pass on the qualifications of examinees, including not only such qualifications as are disclosed by the examination, but also such other qualifications such as age, residence, experience, etc.'' In McQuillin, Municipal Corporations, volume 3, page 242, in discussing city employees, it is said : ''It is frequently provided that nonresidents must establish their residence in a city during their period of employment, usually under penalty of forfeiting their position if they fail to do so.''

It is further argued that ''The object of a civil service system is to secure the appointment and promotion of employees on the basis of their ability to perform the duties of the job.'' The answer is simple: An employee who can not get to the job in time to perform, when performance is demanded is not qualified. Moreover, while the object of civil service is the protection of employees, the object of their employment is the protection of the people and property within the city. The council is charged with both responsibilities, and fitness and qualifications for any employment must be considered in the light of the work required and the conditions under which it is to be performed.

It is further contended that a residence requirement would be of no avail because under Ordinance 266 employees are not permitted to work more than eight hours over a span of 24 hours in one day. By appropriate resolutions the council provided, in 1947, that police officers are subject to duty 24 hours a day, and in 1949 provided that firemen must provide means of telephonic communication with their residences, and irrespective of regular duty are subject to duty during a conflagration when more than half of the department employees are needed. There is no requirement that eight-hour schedules must start at particular times and they can be adjusted to meet emergencies. The provisions should not be construed so as to permit a fireman to quit in the midst of an emergency, or a policeman to quit before completing an arrest, because he had worked eight hours.

It is argued that the provision of Resolution 2700, which gives the city council power to make exceptions to the residence requirement in cases of extreme hardship, is too indefinite and gives it an unlimited and uncontrolled power to discriminate, and to disregard the basic principles of civil service. The exceptions do not grant an uncontrolled discretion. It can be exercised only in cases of extreme hardship and residence can not be extended beyond the 3-mile limit.

If the power is abused, it can be controlled by the courts. ■ " 'Courts should let administrative boards work out their problems with as little judicial interference as possible . . . Such boards are vested with a high discretion and its abuse must appear very clearly before the court will interfere.' " (*Nelson* v. *Dean*, 27 Cal.2d 873, 881 [168 P.2d 16, 168 A.L.R. 467].) There is no evidence in the record that the power has been abused or, in fact, that any exception has ever been granted.

The judgment is affirmed.

Bray, P. J., and Tobriner, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied September 20, 1960.