(Nos. 57313, 57315.—

FRANK FAGIANO, Appellee, v. THE POLICE BOARD OF THE CITY OF CHICAGO *et al.,* Appellants.— RICHARD W. BASTIAN *et al.,* Appellees, v. THE PERSONNEL BOARD OF THE CITY OF CHI-CAGO *et al.,* Appellants.

*Opinion filed October 4, 1983.—Rehearing denied December 2, 1983.*

278

SIMON, J., dissenting.

Stanley Garber, Corporation Counsel, of Chicago (Jerome A. Siegan and Mary K. Rochford, Assistant

Corporation Counsel, of counsel), for appellants.

John D. Moss, of Chicago, for appellee Frank Fagiano.

Kenneth Ditkowsky and Jay Contorer, of Ditkowsky & Contorer, of Chicago, for appellee Richard Bastian.

Epton, Mullin, Segal & Druth, Ltd., of Chicago (Saul A. Epton, Gerald B. Mullin, and Michael E. Kerpan, of counsel), for appellee Norman C. Byttow.

Rick Allan White, of Chicago, for appellee John Green.

J. Peter Dowd and Stephen B. Horwitz, of Jacobs, Burns, Sugarman & Orlove, of Chicago, for *amicus curiae* Chicago Fire Fighters Union Local No. 2.

JUSTICE WARD delivered the opinion of the court:

These appeals, at one time consolidated but severed before oral argument, are treated together here for purposes of opinion. The cases involve the validity of a residence requirement for certain municipal employees contained in an ordinance of the city of Chicago, and the validity of a Chicago police department city residence rule based upon the ordinance. In Bastian v. Personnel Board, No. 57315, the personnel board of the city ordered the discharge of two firemen, Richard Bastian and Norman C. Byttow, and an engineering technician of the city's water department, John Green, for violating chapter 25, section 30, of the Chicago Municipal Code, which requires civil service employees to be "actual residents" of the city. The circuit court of Cook County, reviewing the decisions upon individual petitions by Bastian, Byttow and Green for writs of *certiorari*, reversed the personnel board's decisions. The circuit court considered that the decisions were not contrary to the manifest weight of the evidence, but held that the ordinance was

unconstitutionally vague. The three cases were consolidated for appeal and the appellate court affirmed. 108 Ill. App. 3d 672.

In Fagiano v. Police Board, No. 57313, a Chicago police officer, Frank Fagiano, was discharged for violations of several police department rules, under one of which he was required "to actually reside" within the city limits. The circuit court of Cook County, acting upon a complaint by Fagiano for administrative review, sustained the Chicago police board's findings that he had violated the residency rule and another rule which is not considered on this appeal. The appellate court, however, in a Rule 23 order (87 Ill. 2d R. 23), based upon its decision in *Bastian,* reversed the portion of the judgment sustaining the police board's findings. (108 Ill. App. 3d 1205.) We granted petitions for leave to appeal the Bastian and Fagiano judgments under Rule 315 (87 Ill. 2d R. 315) filed by the defendants, who are the boards and various city departments and officers, and allowed the defendants' motion to consolidate those decisions for this appeal.

The ordinance that the appellate court held unconstitutionally vague provides:

"All officers and employees in the classified civil service of the City shall be actual residents of the City. Any officer or employee in the classified civil service of the City who shall fail to comply with the provisions of this section shall be discharged from the service of the City in the manner provided by law."

Rule 25 of the Chicago police department, which the appellate court also held to be invalid, similarly requires officers "to actually reside within the corporate boundaries of the City of Chicago."

The appellate court, in its opinion in *Bastian,* stated that the word "residence," which may have more than one meaning in the law depending upon the context of its use, was too vague to guide administrative agencies in applying

the ordinance. The court specifically pointed to the difficulty in applying the ordinance where the employee has two dwellings, one in the city and one elsewhere. To illustrate the need for greater clarity or specificity, the court pointed to eight other decisions of the personnel board involving firemen charged with violating the ordinance. The appellate court said that the actions of the board were not consistent in those cases, and on this basis the court held that the ordinance was not only unconstitutionally vague, but also had been applied in such a manner as to violate the plaintiffs' due process rights.

We judge that the appellate court erred.

A legislative enactment is unconstitutionally vague if its terms are so indefinite that "persons of common intelligence must necessarily guess at its meaning and differ as to its application." (*Polyvend, Inc. v. Puckorius* (1979), 77 Ill. 2d 287, 299-300, *appeal dismissed* (1980), 444 U.S. 1062, 62 L. Ed. 2d 744, 100 S. Ct. 1001.) We have recently observed: "Statutes enjoy a strong presumption of constitutionality. To hold a statute unconstitutionally vague, its terms must be so ill defined that their meaning will be determined 'by the opinions and whims of the trier of fact rather than any objective criteria.' (*People v. La Pointe* (1982), 88 Ill. 2d 482, 499.)" (*People v. Greene* (1983), 96 Ill. 2d 334, 338-39.) And we have said: "This court has held that a statute does not violate the due process clauses of the United States or Illinois constitutions, on grounds of vagueness, if the duty imposed by the statute is prescribed in terms definite enough to serve as a guide to those who must comply with it." *Chastek v. Anderson* (1981), 83 Ill. 2d 502, 507.

It is true, as was pointed out in Reese & Green, *That Elusive Word, "Residence,"* 6 Vand. L. Rev. 561 (1953), which the plaintiffs have cited, that "residence" as a legal term, while commonly used in statutes, does not, unlike "domicile," have a fixed and constant meaning. The au-

thors show that it is a variable term, the meaning of which courts must ascertain from the purposes of the statute or ordinance, although in most cases it has been construed to be synonymous with domicile (6 Vand. L. Rev. 561, 561-62.) The authors provide examples of the term's being interpreted differently in various contexts, such as in statutes concerning divorce jurisdiction and income taxation.

This, of course, does not require a conclusion that the use of the word here is unconstitutionally vague. Words may differ in meaning according to the context of their use. This does not mean that in every context the meaning of the word is unclear; the meaning may be clear in the particular context. We consider that in the context here "residence" was intended to be synonymous with domicile, which has been defined as "the place where a person lives and has his true, permanent home, to which, whenever he is absent, he has an intention of returning." *Peirce v. Peirce* (1942), 379 Ill. 185, 192.

The plaintiffs' briefs refer to decisions in various areas where courts stated that "residence" and its variations were without a fixed meaning. (*Lister v. Hoover* (7th Cir. 1981), 655 F.2d 123, 128 (statute concerning State university tuition); *Myers v. Commissioner* (4th Cir. 1950), 180 F.2d 969, 971 (tax statute); *United States v. Stabler* (3d Cir. 1948), 169 F.2d 995, 998 (statute governing venue for denaturalization proceedings); *Hughes v. Illinois Public Aid Com.* (1954), 2 Ill. 2d 374, 380 (public aid statute); *Rosenshine v. Rosenshine* (1978), 60 Ill. App. 3d 514, 517 (domestic relations statute); *Stein v. County Board of School Trustees* (1967), 85 Ill. App. 2d 251, 255, *aff'd* (1968), 40 Ill. 2d 477 (statutes governing the right to vote).) In none of those decisions, however, was the statute containing the terms held to be unconstitutionally vague. The plaintiffs do not cite any decision holding a statute unconstitutionally vague through use of the word "residence."

Reese and Green themselves note that residence in a

State or a subdivision of a State is a common statutory requirement for eligibility to hold office, and in that context, the term is generally regarded as synonymous with domicile. 6 Vand. L. Rev. 561, 571-72.

Courts considering laws requiring police officers or firemen to reside near or within a governmental unit have found them adequately clear and defined to be understood and interpreted. (See Annot., *Validity, Construction, and Application of Enactments Relating to Requirement of Residency Within or Near Specified Governmental Unit as Condition of Continued Employment for Policemen or Firemen,* 4 A.L.R.4th 380, 405-07 (1981).) Those courts have judged the enactments to require the police officers and firemen to establish their permanent homes within the prescribed area. See *Miller v. Police Board* (1976), 38 Ill. App. 3d 894 (police department rule that officers reside in the city meant that officers must have their permanent abode or home there, and that requires their physical presence and intent to make that location their permanent home); *Mercadante v. City of Paterson* (1970), 111 N.J. Super. 35, 40, 266 A.2d 611, 614, *aff'd* (1971), 58 N.J. 112, 275 A.2d 440 (statutes requiring municipal officers to reside in the municipality, and permitting policemen and firemen to hold their offices during their residence in the municipality, required them to have their "real and principal residence, in short, domicile," in the municipality, so as to foster the identity with the community which may well have been the legislature's goal); *Contento v. Kohinke* (1973), 42 A.D.2d 1025, 348 N.Y.S.2d 392 (town resolution that police officers must reside in the town requires the officer to have a continual or extended physical presence at an abode in the town, not simply that he have one of his locations there at which he spends time occasionally, in view of the resolution's purpose that officers be able to respond quickly for active service); *McCarthy v. Philadelphia Civil Service Com.* (1975), 19 Pa. Commw. 383, 339 A.2d

634, *aff'd on other grounds* (1976), 424 U.S. 645, 47 L. Ed. 2d 366, 96 S. Ct. 1154 (in the ordinance requiring civil service employees to be *bona fide* residents of the city, *"bona fide* residence" meant "domicile").

In one of those decisions, in fact, our appellate court construed the term "reside" in a Chicago police department rule nearly identical to the one here. The only difference between the rule in *Miller* and the present one (requiring that officers "actually" reside in Chicago), which is based on the ordinance involved here, is the word "actually." (*Miller v. Police Board* (1976), 38 Ill. App. 3d 894, 904 (supplemental opinion).) As noted, the court in *Miller,* while not presented with the constitutional-vagueness question, understood the rule to require the officers to establish a permanent home in Chicago, that they be physically present in the city with the intention to make it their permanent residence. (In a petition for rehearing in *Miller* it was argued that the ordinance was unconstitutionally vague, but the court, in a supplemental opinion, stated that this issue had been waived.)

It would be unreasonable to assume that in these numerous decisions courts were simply guessing at the meaning of "reside." Rather, reasonably one must conclude that the courts, looking to the obvious purposes of the laws, perceived that the enactments, by requiring employees to reside within the city, required them to establish their principal residence, their domicile, in the city. We judge that the typical reasonable person considering the ordinance and rule here would arrive at the same conclusion and would have sufficient guidance in order to comply with the ordinance and rule.

In *Doris v. Police Commissioner* (1978), 374 Mass. 443, 373 N.E.2d 944, the court considered a complaint of vagueness against a statute stating that city police officers could reside outside the city, provided that they reside within the Commonwealth and within 10 miles of the city.

It was argued by opponents of the statute that the term "reside" was unclear, in that it could refer to the physical location of the officer's dwelling, or to the community where the officer lived. The difference was important, because the latter construction would allow an officer to live in a town whose city limits were within 10 miles of the city in which he worked, even if the officer's house was more than 10 miles from that city.

The court rejected the contention that the word was fatally vague. The court pointed out that the statute was not a criminal statute or one affecting fundamental rights. Too, the court stated that, to the extent any ambiguity did exist, the meaning of "reside" in the statute, as in any enactment to be examined, could be examined in relation to the purpose of the act and in accordance with the other terms in it. The court concluded that in view of the purpose of the act, to ensure that officers could be assembled quickly, the word "reside" meant the location of the dwelling place of the officer.

The court in *Marabuto v. Town of Emeryville* (1960), 183 Cal. App. 2d 406, 6 Cal. Rptr. 690, too, considered a vagueness complaint against a city council resolution requiring all civil service employees to maintain a residence in the city. The city council had reserved the right, however, to permit an employee to live outside the city, but within three miles of it, in cases of extreme hardship or where the health of the employee or his family was jeopardized. The challenge on the ground of vagueness was based upon the power given the council to make exceptions. It was argued that the standard for exceptions was too indefinite, and therefore gave uncontrolled power to discriminate. The court rejected the contention that the standard was too vague. The court pointed out the need to allow administrative boards to operate without unnecessary, shackling judicial interference.

We cannot adopt the plaintiffs' suggestion that the ordi-

nance and rule are constitutionally infirm for not setting out strict guidelines for administrative bodies to follow in determining residence, or because the boards themselves have not promulgated such standards for their own use. It is said that such guidelines are necessary to assist in deciding the residence of the employee and to prevent abuses of discretion by the boards.

This argument does not sufficiently appreciate that the issue to be decided by a board is principally of determining the employee's intent. (*Peirce v. Peirce* (1942), 379 Ill. 185, 192 (the question of a person's domicile is largely one of intent).) Because intent may be manifested in ways too numerous to simply be listed, an administrative board must look to all of the factors present. There would be danger, of course, that if such standards were itemized in laundry-list fashion the approach by the administrative board to the question would become a mechanical one, and not an individualized determination.

The decision in *Lister v. Hoover* (7th Cir. 1981), 655 F.2d 123, reflects this. There, three former law students of the University of Wisconsin brought an action against officials of the university, claiming that the denial of resident status to them, and the benefit of reduced tuition, violated their rights to equal protection and due process. A Wisconsin statute provided for reduced tuition for a *"bona fide* resident" and stated that a student from another State who is in Wisconsin principally for educational purposes would not be considered a Wisconsin resident simply through attendance at a Wisconsin school. The statute also stated that, in determining *bona fide* residence, the filing of a State tax return in Wisconsin, acquiring eligibility to vote there, motor vehicle registration there, and employment in the State would be considered, although those factors were neither necessary nor sufficient in themselves to establish *bona fide* residence.

More than a year after the plaintiffs had been initially

denied resident status, they applied for reclassification as residents. At that time each of them possessed some or all of the four indicia listed above and had other connections with the State. Two of the three plaintiffs were reclassified.

The plaintiffs had argued that they had not been afforded sufficient guidance as to the standards to be used in determining residence, and that this had denied them due process. The court rejected this contention, however, saying that the question was principally one of intent, and that the plaintiffs had been given adequate opportunity to present evidence to the officials. The court stated:

"We agree with the district court, however, that no additional guidance was necessary as a matter of constitutional law. The issue is one of intent and no catalogue of objective criteria could, in most circumstances, be conclusive or determinative. [*Hooban v. Boling* (6th Cir. 1974), 503 F.2d 648, 652.] Plaintiffs were not hindered in their presentation of relevant evidence. Indeed, the extensive presentation of evidence of community involvement and permanent ties to Wisconsin appears to have been decisive in the two cases where resident status was eventually granted. There is no allegation that improper or incorrect evidence was considered. Compare *Gonzales v. United States,* 348 U.S. 407, 413, 75 S. Ct. 409, 412, 99 L. Ed. 467 [, 472] (1955). When discussing the Connecticut approach to this question, the Supreme Court quoted approvingly from an unreported opinion of the Connecticut Attorney General:

In reviewing a claim of in-state status, the issue becomes essentially one of domicile. In general, the domicile of an individual is his true, fixed and permanent home and place of habitation. It is the place to which, whenever he is absent, he has the intention of returning. This general statement, however, is difficult of application. Each individual case must be decided on its own particular facts. In reviewing a claim, relevant criteria include year-round residence, voter registration, place of filing tax returns, property ownership, driver's license, car registration,

marital status, vacation employment, etc.

*Vlandis v. Kline,* 412 U.S. 441, 454, 93 S. Ct. 2230, 2237, 37 L. Ed. 2d 63 [, 72-73] (1973). As Wisconsin's approach does not differ materially from that set out above, we feel compelled to find no violation of due process in this regard. There is every indication that plaintiffs were given an adequate opportunity to be heard at a 'meaningful time and in a meaningful manner.' *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S. Ct. 893, 902, 47 L. Ed. 2d 18 [, 32] (1976)." 655 F.2d 123, 126-27.

Too, in this regard, the decision in *Chastek v. Anderson* (1981), 83 Ill. 2d 502, is helpful. There, the plaintiff, a dentist, sought to restrain the Department of Registration and Education from conducting a disciplinary hearing against him. Pursuant to section 7(11) of "An Act to regulate the practice of dental surgery and dentistry ***" (Ill. Rev. Stat. 1977, ch. 111, par. 2222(11)), which provided that the Department could suspend or revoke a license for "[i]mproper, unprofessional or dishonorable conduct," the Department charged the plaintiff in a complaint with "unprofessional conduct" in the treatment of three patients over a period of years. The plaintiff contended that the statutory phrase allowing discipline for improper, unprofessional or dishonorable conduct was unconstitutionally vague, because it failed to give him notice of the type of acts that were unprofessional conduct.

This court rejected the contention, holding that the language was capable of being understood when one looked to the purpose of the act, *viz,* to promote the public health and safety. The court perceived, too, that the language in the statute, of necessity, had to be broad, as it would be impossible to specifically catalogue every act that would constitute unprofessional or dishonorable conduct and warrant discipline.

In *Polyvend, Inc. v. Puckorius* (1979), 77 Ill. 2d 287, 300, *appeal dismissed* (1980), 444 U.S. 1062, 62 L. Ed. 2d 744, 100 S. Ct. 1001, this court summarized the principle

governing the delegation of legislative power to administrative agencies:

> "As this court stated in *Hill v. Relyea* (1966), 34 Ill. 2d 552, 555:
>
>> 'Absolute criteria whereby every detail necessary in the enforcement of a law is anticipated need not be established by the General Assembly. The constitution merely requires that intelligible standards be set to guide the agency charged with enforcement \*\*\*.'
>
> More specifically, we held in *Stofer v. Motor Vehicle Casualty Co.* (1977), 68 Ill. 2d 361, 372, that, in delegating its authority, the legislature must 'provide sufficient identification of the following:
>
>> (1) The *persons* and *activities* potentially subject to regulation;
>>
>> (2) The *harm* sought to be prevented; and
>>
>> (3) The general *means* intended to be available to the administrator to prevent the identified harm.' "

We do not consider that the ordinance and rule violate these criteria and subject the employees to arbitrary action by the boards. To support their contention, the plaintiffs have presented to us eight unpublished opinions of the personnel board involving other firemen, and allege that these opinions demonstrate that the ordinance is being arbitrarily enforced.

In two of those decisions, the charges against the firemen were dismissed, and in the others the firemen were suspended for certain periods. The appellate court in *Bastian* pointed to these decisions, which had not been presented to the trial court, and concluded that the ordinance had been arbitrarily applied to Bastian, Byttow and Green. The court said that it saw no reasonable ground for distinguishing the circumstances in those decisions from the circumstances in the causes before it. The court said that the plain terms of the ordinance require the dismissal of violators, and that some firemen had been only suspended showed the arbitrariness of the board.

The defendants' response is that it was improper for

the appellate court to consider the other decisions because they had not been presented to the trial court and were not in the record. The defendants maintain, too, that the appellate court could not have validly compared the circumstances in the causes before it with those in the other cases, because the appellate court did not have before it the administrative record of those cases. All that has been presented to us and, earlier, to the appellate court are the brief decisions of the personnel board and the brief reports of the hearing officers. We need not decide, however, whether the appellate court erred in considering those decisions, because in any event we judge that, as presented, they do not show an unconstitutional arbitrariness on the part of the board.

It is not shown that in these decisions the personnel board applied a standard of residency different from the one announced by the appellate court in *Miller v. Police Board* (1976), 38 Ill. App. 3d 894, the closely resembling case that we have discussed earlier in this opinion. It is impossible to compare the circumstances in those matters with those here and attempt to judge the consistency of the personnel board. The facts in the other causes are, of course, not identical; the administrative records in those cases are not in the record here, and, further, there is no way to judge here to what extent the decisions were based upon the credibility or want of it of those testifying.

There is no guarantee, of course, that there was no error in the personnel board's application of the standard of residency to the facts here or to those in other decisions referred to (we have not been told whether any of them were judicially reviewed and affirmed or reversed); however, no intentional discrimination has been shown. The Supreme Court has stated that "[t]he Due Process Clause *** is not a guarantee against incorrect or ill-advised personnel decisions." (*Bishop v. Wood* (1976), 426 U.S. 341, 350, 48 L. Ed. 2d 684, 693, 96 S. Ct. 2074, 2080.) The court has

long recognized, too, that "[t]he unlawful administration by state officers of a state statute fair on its face, resulting in its unequal application to those who are entitled to be treated alike, is not a denial of equal protection unless there is shown to be present in it an element of intentional or purposeful discrimination." (*Snowden v. Hughes* (1944), 321 U.S. 1, 8, 88 L. Ed. 497, 503, 64 S. Ct. 397, 401.) As Justice Frankfurter put it: "The Constitution does not assure uniformity of decisions or immunity from merely erroneous action, whether by the courts or the executive agencies of a state." 321 U.S. 1, 15, 88 L. Ed. 497, 506-07, 64 S. Ct. 397, 404 (Frankfurter, J., concurring).

Nor do we perceive a constitutional issue because, in the few other decisions of the personnel board brought to our attention, violators of the ordinance were only suspended. Again, there is no evidence of intentional discrimination, nor is there evidence to support a conclusion that the personnel board has acted arbitrarily. There may have been "merely erroneous action," but without constitutional deprivation. We note that in those other decisions involving suspensions there was a showing that there were, prior to the decision of the personnel board, belated good-faith efforts by the firemen to comply. This was not so in the cases of Bastian, Byttow, and Green.

The appellate court, in holding the ordinance to be unconstitutional, did not reach the other objections of the plaintiffs to their discharges. Among those was the question of sufficiency of the evidence. We accordingly remand the causes to the appellate court for consideration of these questions.

The appellate court did reach one other issue, however, that of Bastian's right to attorney fees. Bastian had cross-appealed from the trial court's judgment denying him attorney fees. His request was for fees under section 1988 of title 42 of the United States Code (42 U.S.C. sec 1988 (1976)), on the ground that he was the prevailing party in

a civil rights action brought pursuant to section 1983 of that title (42 U.S.C. sec. 1983 (1976)), which requires a showing that the defendant, acting under the color of State law, deprived him of his Federal constitutional rights. Though the appellate court and circuit court held in Bastian's favor upon constitutional grounds he raised, the appellate court noted that the decision to award fees under section 1988 rests in the court's discretion, and it judged that the trial court did not abuse discretion in denying fees.

We need not decide whether the appellate court was correct in holding there had been no abuse of discretion, because we have concluded that the circuit and appellate courts' constitutional holdings were error. See *Harris v. Pirch* (8th Cir. 1982), 677 F.2d 681, 689 (reversal of the judgment for the plaintiff in a civil rights action under section 1983 negated the award of attorney fees under section 1988 to the plaintiff as the prevailing party in the suit); *Dike v. School Board* (5th Cir. 1981), 650 F.2d 783, 787-88 (reversal of the district court's dismissal of the plaintiff's section 1983 suit requires the reversal of the section 1988 award of attorney fees to the defendant as the prevailing party).

For the reasons given, the judgment of the appellate court is vacated and the causes are remanded to the appellate court.

*Vacated and remanded.*

JUSTICE SIMON, dissenting:

For the reasons set forth in the appellate court opinion in *Bastian v. Personnel Board* (1982), 108 Ill. App. 3d 672, I believe that the residency requirement established in chapter 25, section 30, of the Chicago Municipal Code "is unconstitutional because it lacks definite standards for equitable enforcement." 108 Ill. App. 3d 672, 681.