ROGER D. LITTLE, Champaign County Treasurer and *ex officio* Treasurer and Collector of East Lake Fork Special Drainage District, Plaintiff-Appellant and Cross-Appellee, v. EAST LAKE FORK SPECIAL DRAINAGE DISTRICT *et al.*, Defendants-Appellees and Cross-Appellants.

Fourth District   No. 4—87—0527

Opinion filed February 11, 1988.

Thomas J. Difanis, State's Attorney, of Urbana (Trisha Crowley, Assistant State's Attorney, of counsel), for appellant.

Mary A. Perlstein, of Dobbins, Fraker, Tennant, Joy & Perlstein, of Champaign, for appellees.

JUSTICE SPITZ delivered the opinion of the court:

Plaintiff, the treasurer of Champaign County (treasurer), filed a complaint in the circuit court of Champaign County against defendants East Lake Fork Special Drainage District (district) and its commissioners, alleging that he was entitled to reimbursement for the actual costs for his services as *ex officio* treasurer and collector for East Lake Fork Special Drainage District, pursuant to sections 4—36 and 4—37 of the Illinois Drainage Code (Code) (Ill. Rev. Stat. 1985, ch. 42, pars. 4—36, 4—37). Defendants filed an amended motion for judgment on the pleadings (Ill. Rev. Stat. 1985, ch. 110, par. 2—615(e)), alleging that sections 4—36 and 4—37 were in violation of article VII, section 9(a), of the Illinois Constitution (Ill. Const. 1970, art. VII, §9(a)). Following a hearing, the trial court denied the motion for judgment on the pleadings, finding the disputed provisions were constitutional. A bench trial was held. At the conclusion of the trial, the court found that the treasurer's method of computing his actual costs was inap-

propriate under the provisions of the Code. The treasurer appeals from this finding and the district cross-appeals from the order of the trial court denying the motion for judgment on the pleadings and ruling that sections 4—36 and 4—37 of the Code were constitutional. For the following reasons, we reverse the order of the trial court which found the treasurer's method of computing his actual costs was inappropriate under sections 4—36 and 4—37 of the Code.

On August 28, 1985, plaintiff Roger D. Little, treasurer of Champaign County, filed a complaint in the circuit court of Champaign County against defendants East Lake Fork Special Drainage District and its commissioners, Bill Klein, John Hixson, and Gilbert Magsamen. The treasurer's complaint alleged that pursuant to sections 4—36 and 4—37 of the Code he was *ex officio* treasurer and collector of East Lake Fork Special Drainage District and in that capacity he provided various services and incurred certain expenses. The complaint further alleged that sections 4—36 and 4—37 provided for reimbursement of his actual costs and that he had made a demand for payment but the district refused to pay. The treasurer requested that the disputed provisions of the Code be declared constitutional and that the district be ordered to pay his actual costs in the amount of $2,395.72.

The district filed an answer to the complaint which admitted the demand for payment and refusal to pay but denied that the figure calculated by the treasurer was "actual costs" and denied that the disputed provisions were constitutional. Thereafter, the district filed a motion and an amended motion for judgment on the pleadings, alleging on several grounds that sections 4—36 and 4—37 of the Code were unconstitutional. Following a hearing, the trial court ruled that the disputed provisions were constitutional. The district's subsequent motion to reconsider was denied.

A bench trial was then held on April 20, 1987. The first witness to testify was the Champaign County treasurer, Roger D. Little. The treasurer testified on direct examination that his responsibilities as elected treasurer generally include the safekeeping and custody of all funds derived under the Champaign County budget and the authorized disbursement of those funds. As *ex officio* collector for Champaign County he is responsible for collecting all real estate taxes levied within the county. The treasurer pointed out that his office services 123 separate taxing districts and that it services tax collections for 71 drainage districts. With regard to the drainage districts, the treasurer's responsibilities include the collection of taxes, the distribution of funds to the districts' accounts, the authorized disbursement of funds from those accounts, the authorized investment of

funds, and maintenance of the districts' books and accounts.

The treasurer next testified that he had previously lobbied for a law to allow recovery of expenses incurred in performing the aforementioned services. On January 1, 1984, the provisions of sections 4—36 and 4—37 of the Code became effective, whereupon the treasurer instructed his staff to begin implementing the new laws. The treasurer stated that he initially informed Joyce Meents, the accounting clerk, to "try to keep track of her time on each individual district" but that this "proved not to be the best method." The treasurer described the formula ultimately used by his office to compute the expenses as follows:

> "I think the formula we finally came up with has a factor in for a substantial portion of Mrs. Meents actual salary, a portion that's in for computer time, since the districts have been fully put on the computer system now for the transactions. In addition to the daily or monthly transactions for the districts, the office is responsible for preparing the annual report for each district, and so that has been placed on computer, so the formula did include a factor for computer time, and some office overhead figures in there.
>
> * * *
>
> I do not think our formula was all-inclusive, because the formula reflects charges for Mrs. Meents' salary only, and, obviously, because of the smallness of our office and one person being [in] charge, all of us within the office do devote a certain amount of time to the activity in her absence, and, certainly, there is no factor in the formula for any of my salary or my deputy or any other people in the office. So I feel the formula is very modest, and I don't think that there was [sic] any excesses built into the formula."

The treasurer further testified that the first bills sent to the drainage districts in 1984 covered only a nine-month period due to their fiscal year and totalled approximately $12,000 for all districts. Thereafter, annual billing has totalled between $12,000 to $13,000.

On cross-examination, the treasurer was asked how his office allocated the costs and expenses to the districts and he responded:

> "I think the—by nature of the laws, it was left—that was adopted by the State Legislature—left it up in the air. The language simply stated that we could bill for actual costs incurred. By the nature of having 71 separate districts that we were responsible for, and one person doing virtually all the services for them, I think you can see that it becomes very difficult to allo-

cate one, two or three minutes for transactions for this district, and then, two minutes later, you have an allocation for that district. That was what was attempted to be done, initially, and found it was just very impractical to try to take into account any type of time log, because when you've had a phone call, say, from your office, or any of the other attorneys representing drainage districts that you put down 30 seconds or 60 seconds, for each bank reconciliation—or she would put down two minutes on this one and, maybe, 10 minutes or half an hour on the bigger ones—so it did not seem that the time method was a proper way for a—feasible way for us to tax the charges."

\*\*\* That's when we came up with the fact that it included numbers of transactions for each district, because we felt that it would even out—small transactions that took 30 seconds would be evened out by longer ones that took, maybe, 25 or 30 minutes. But, on a transaction basis for each district, I think it's still a fairly equitable method of apportioning costs."

The treasurer stated that the transactions are entered into the ledgers for the various districts and are counted and totalled at the end of the year. He further stated that although he did not personally calculate how much time Meents spent "on each set of books," he believed that " a minimum of two-thirds of her time in the office is spent on doing \*\*\* drainage work alone."

The treasurer testified that Meents sought help from the auditor's office to devise the formula for billing which included such items as a percentage of her salary and fringe benefits, and overhead such as computer time, stationery and postage. The treasurer interpreted the statutory language "actual costs" to be "the amount of time and resources and equipment that it takes to do the job."

The next witness to testify was Joyce Meents, the accounting clerk for the Champaign County treasurer's office. Her responsibilities included the handling of bank reconciliations, bankruptcies, and general tax work. She was also responsible for the 72 drainage district accounts and their 150 subdistrict accounts. Her duties with regard to the drainage district accounts involved maintaining books for each account, maintaining computer records, handling the investments—such as purchasing CD's on the attorneys' requests and maintaining money market accounts, sending out the special billings, collecting and depositing funds, disbursing checks and preparing the financial reports for each district. She also computes and bills the drainage districts for the services the treasurer's office provides. Meents initially attempted to keep track of the time she spent on the

drainage district accounts and estimated that it involved at least 50% of her time. Thereafter she sought assistance from the auditor's office in devising a formula to compute her expenses. The formula included computer time, her salary, fringe benefits and overhead.

The final witness to testify was Carol Wadleigh, a chief deputy auditor for Champaign County. Wadleigh testified that she keeps the county's accounting system in balance, prepares outside financial reports for the State and Federal government, and prepares cost allocation plans for county departments if they want to bill outside agencies or companies. She assisted the treasurer's office in computing the costs for services to drainage districts in 1984. Wadleigh examined the treasurer's budget to decide which costs would be relevant. She determined that Joyce Meents' salary and her fringe benefits, and general office overhead such as stationery, telephone, building maintenance, postage costs and computer costs were relevant costs. Wadleigh devised a formula which allocated the costs according to the number of transactions for the districts. Meents then calculated each district's number of transactions. Wadleigh testified that basically, all the costs were added together, then divided by the total number of transactions in all districts to come up with a per transaction cost. That figure was then multiplied by the number of transactions in each drainage district and additional computer costs and postage were added in.

On July 8, 1987, the trial court issued its memorandum opinion ruling in favor of the district that the "formula devised by the [treasurer] for determining the bills for services rendered to the drainage district is inappropriate under" sections 4—36 and 4—37 of the Code. A written order was entered July 13, 1987.

On August 3, 1987, the district filed a notice of appeal from the order of the trial court holding the disputed provisions were constitutional. The treasurer filed a notice of appeal on August 4, 1987, from the order of the circuit court finding the treasurer's method of computing actual costs was inappropriate under the provisions of the Code. The district then filed an amended notice of appeal as notice of cross-appeal on August 5, 1987.

The district contends on cross-appeal that the amendments to sections 4—36 and 4—37 of the Code are unconstitutional.

Prior to 1984, sections 4—36 and 4—37 of the Code (Ill. Rev. Stat. 1955, ch. 42, pars. 4—36, 4—37) provided:

"Except as hereinafter provided in Section 4—38, the County Treasurer of the county in which a district is organized, is, ex officio, the treasurer of that district, and his official bond as

County Treasurer shall stand as his bond as district treasurer. The treasurer shall perform such duties and functions as are specified elsewhere in this Act. The treasurer shall receive for his services one per cent of the funds paid out by him, provided such fee shall not exceed $600.00 in any one year for any one district. Such fee shall be paid out of the funds of the district for which the services were rendered." (Ill. Rev. Stat. 1955, ch. 42, par. 4—36.)

"Except as hereinafter provided in Section 4—38, the County Collector of the County in which any of the lands of the district are situated shall collect all drainage assessments provided for by this Act and assessed against lands in his county. His official bond as County Collector shall stand as his bond as district collector. The collector shall perform such other duties and functions as are specified elsewhere in this Act. The collector shall receive for his services one per cent of the funds collected by him on any original or additional assessment and two percent on any annual maintenance assessment, provided such fee shall not exceed $600.00 in any one year for any one district. Such fee shall be paid out of the funds of the district for which the services were rendered." (Ill. Rev. Stat. 1955, ch. 42, par. 4—37.)

Effective January 1, 1984, sections 4—36 and 4—37 (Ill. Rev. Stat. 1985, ch. 42, pars. 4—36, 4—37) were amended as follows:

"Except as hereinafter provided in Section 4—38, the County Treasurer of the county in which a district is organized, is, ex officio, the treasurer of that district, and his official bond as County Treasurer shall stand as his bond as district treasurer. The treasurer shall perform such duties and functions as are specified elsewhere in this Act. The treasurer shall *be reimbursed by each district and subdistrict for the actual costs for his services*. Such *costs* shall be paid out of the funds of the district for which the services were rendered." (Emphasis on amendatory language.) (1983 Ill. Laws 4842.)

"Except as hereinafter provided in Section 4—38, the County Collector of the County in which any of the lands of the district are situated shall collect all drainage assessments provided for by this Act and assessed against lands in his county. His official bond as County Collector shall stand as his bond as district collector. The collector shall perform such other duties and functions as are specified elsewhere in this Act. The collector shall *be reimbursed by each district and subdistrict for the actual*

*costs for his services.* Such *costs* shall be paid out of the funds of the district for which the services were rendered." (Emphasis on amendatory language.) 1983 Ill. Laws 4842-43.

■ The district first argues that reimbursement of the county treasurer for the costs of his services is prohibited by article VII, section 9(a), of the Illinois Constitution (Ill. Const. 1970, art. VII, §9(a)). Article VII, section 9(a), of the Illinois Constitution provides:

"(a) Compensation of officers and employees and the office expenses of units of local government shall not be paid from fees collected. Fees may be collected as provided by law and by ordinance and shall be deposited upon receipt with the treasurer of the unit. Fees shall not be based upon funds disbursed or collected, nor upon the levy or extension of taxes." (Ill. Const. 1970, art. VII, §9(a)).

It is the district's position that the reimbursement for the actual costs of services rendered, as provided in the amendments to sections 4—36 and 4—37, comes within the definition of "fees" as being a reward given to the treasurer for the execution of his office. The district asserts that when the fees are used to pay the compensation of the treasurer and his office expenses it is a violation of the provisions of the first sentence of article VII, section 9(a). The district further contends that the amendments are prohibited by the second sentence of article VII, section 9(a), as they place no restriction on the treasurer from charging costs for services rendered in connection with collecting or disbursing funds, or upon the levy or extension of taxes.

The district relies on *City of Joliet v. Bosworth* (1976), 64 Ill. 2d 516, 356 N.E.2d 543. In *Bosworth*, the supreme court held that article VII, section 9(a), of the Illinois Constitution of 1970 makes the collection of taxes a county function to be supported solely by county taxes and precludes counties from being reimbursed by other taxing bodies for collection of their taxes. The case involved the constitutionality of a portion of "An Act concerning fees and salaries ***" (citing Ill. Rev. Stat., 1974 Supp., ch. 53, par. 39a), which allowed counties to bill each taxing district within the county for its proportionate share of the actual costs incurred by a county in extending and collecting taxes on behalf of all taxing districts. Relying in part on the constitutional proceedings (4 Record of Proceedings, Sixth Illinois Constitutional Convention 3404-05) the court held that the statute was unconstitutional, finding that the intention was "to preclude counties from seeking, in any form, reimbursement from the various taxing bodies for county services rendered in the collection of taxes." (*Bosworth*, 64 Ill. 2d at 524, 356 N.E.2d at 547.) In so holding, the court stated:

"By law the county treasurer is required to act as *ex officio* collector for local taxing units. (Ill. Rev. Stat., 1970 Supp., ch. 120, par. 657.) Neither counties nor local taxing bodies have any choice in the matter, and the question of the ability of the two units of local government to contract among themselves, to obtain or share services, or to exercise, combine or transfer powers and functions as to the matter of tax collection does not arise. Section 9(a) of article VII is, of course, limited in scope to the particular functions specified therein, and does not purport in any way to limit or restrict counties and local taxing districts from contracting among themselves as to other matters." *Bosworth*, 64 Ill. 2d at 531, 356 N.E.2d at 551.

The district also relies upon *Century Community Unit School District No. 100 v. McClellan* (1975), 27 Ill. App. 3d 255, 327 N.E.2d 32. In *McClellan*, the circuit court granted a writ of *mandamus* to the school district compelling the county to pay over funds withheld from the district to cover the cost of assessment, extension and collection of the district's taxes by the county. The *McClellan* court interpreted article VII, section 9(a), stating:

"As we understand this constitutional provision, it means that fees not based upon funds disbursed or collected and not based upon the levy or extension of taxes may be collected, providing they are collected according to a law or ordinance, deposited with the treasurer of the unit, and are not used to pay *** office expenses." *McClellan*, 27 Ill. App. 3d at 257, 327 N.E.2d at 34.

The treasurer contends that the trial court did not err in holding the amendments to sections 4—36 and 4—37 of the Code constitutional under article VII, section 9(a), of the Illinois Constitution. The treasurer asserts that under the Illinois Drainage Code, each drainage district has the power to choose its treasurer, either the county treasurer or an individual selected by the drainage district. The treasurer further asserts that it is not unconstitutional for one unit of local government to charge another for its services.

Based upon our review of the parties' contention together with the authorities cited, we conclude that the reimbursement of the treasurer for the actual costs of his services under sections 4—36 and 4—37 of the Code (Ill. Rev. Stat. 1985, ch. 42, pars. 4—36, 4—37) is not prohibited by article VII, section 9(a), of the Illinois Constitution (Ill. Const. 1970, art. VII, §9(a)). The district's reliance upon *Bosworth* and *McClellan* is misplaced. In *Bosworth*, the supreme court struck down a statute which allowed counties to bill each taxing district

within the county for its proportionate share of the actual costs incurred by a county in extending and collecting taxes. (*Bosworth*, 64 Ill. 2d 516, 356 N.E.2d 543.) In *McClellan*, the appellate court reversed the order of the circuit court which granted a writ of *mandamus* to a school district compelling the county to pay over funds withheld from the district to cover the cost of assessment, extension, and collection of the district's taxes by the county. (*McClellan*, 27 Ill. App. 3d 255, 327 N.E.2d 32.) In the case at bar, however, the actual costs were not based upon funds disbursed or collected, nor upon the levy or extension of taxes. Moreover, as the court in *Bosworth* stated, the county treasurer was required to act as *ex officio* collector for the local taxing units (see Ill. Rev. Stat., 1970 Supp., ch. 120, par. 657), and neither the counties nor the local taxing bodies had any choice in the matter. The court pointed out, however, that "the question of the ability of the two units of local government to contract among themselves, to obtain or share services, or to exercise, combine or transfer powers and functions as to the matter of tax collection[s]" did not arise. (*Bosworth*, 64 Ill. 2d at 531, 356 N.E.2d at 554.) The court further stated that section 9(a) (Ill. Const. 1970, art. VII, §9(a)) is limited in scope to the particular functions specified therein, "and does not purport in any way to limit or restrict counties and local taxing districts from contracting among themselves as to other matters." (*Bosworth*, 64 Ill. 2d at 531, 356 N.E.2d at 551.) As the treasurer in the instant case points out, pursuant to the Illinois Drainage Code, each drainage district has the power to choose its treasurer, either the county treasurer or an individual selected by the drainage district.

In light of the foregoing, we conclude that the treasurer's reimbursement for the actual costs of his services under sections 4—36 and 4—37 of the Code is not prohibited by article VII, section 9(a), of the Illinois Constitution.

■ The district next contends that the amendments to sections 4—36 and 4—37 of the Code violate the due process clause of the fourteenth amendment to the United States Constitution and article I, section 2, of the Illinois Constitution of 1970. (U.S. Const., amend. XIV; Ill. Const. 1970, art. I, §2.) The district asserts that the terms "actual costs" as used in the amendments are unconstitutionally vague and indefinite. The treasurer contends that the terms are definite enough to serve as a guide to those who must comply with them.

A legislative enactment is unconstitutionally vague if its terms are so indefinite that "persons of common intelligence must necessarily guess at its meaning and differ as to its application." (*Polyvend, Inc. v. Puckorius* (1979), 77 Ill. 2d 287, 300, 395 N.E.2d 1376, 1381, *ap-*

*peal dismissed* (1980), 444 U.S. 1062, 62 L. Ed. 2d 744, 100 S. Ct. 1001.) The supreme court has observed: "Statutes enjoy a strong presumption of constitutionality. To hold a statute unconstitutionally vague, its terms must be so ill defined that their meaning will be determined 'by the opinions and whims of the trier of fact rather than any objective criteria.' (*People v. La Pointe* (1982), 88 Ill. 2d 482, 499 [,431 N.E.2d 344, 364].)" (*People v. Greene* (1983), 96 Ill. 2d 334, 338-39, 450 N.E.2d 329, 331.) Further, the supreme court has held that a statute does not violate due process clauses of the United States or Illinois Constitutions, on grounds of vagueness, if the duty imposed by the statute is prescribed in terms definite enough to serve as a guide to those who must comply with it. *Fagiano v. Police Board* (1983), 98 Ill. 2d 277, 456 N.E.2d 27.

■ We reject the district's contention that the terms "actual costs" in sections 4—36 and 4—37 (Ill. Rev. Stat. 1985, ch. 42, pars. 4—36, 4—37) are fatally vague. Rather, we believe these terms are adequately clear to be understood and interpreted and sufficiently definite to serve as a guide to those who must comply with them. We point out that these statutes are not criminal in nature or ones affecting fundamental rights. Further, to the extent any ambiguity exists, the meaning of the terms can be examined in relation to the purpose of the statute and in accordance with the other terms of it. See *Fagiano*, 98 Ill. 2d 277, 456 N.E.2d 27 (and cases cited therein).

■ Finally, the district contends the amendments to the Code violate the equal protection clauses of the United States and Illinois Constitutions (U.S. Const., amend. XIV; Ill. Const. 1970, art. I, §2) and are special legislation (Ill. Const. 1970, art. IV, §13). The district contends that it is unreasonable to permit county treasurers to charge "actual costs" for services provided to drainage districts when they are not authorized to charge other units of local government. The district asserts that the amendments to sections 4—36 and 4—37 create an arbitrary and unreasonable classification which imposes a burden on drainage districts that is not imposed on any other unit of local government.

The treasurer contends that sections 4—36 and 4—37 of the Code do not violate the equal protection clauses of the United States or Illinois Constitution or the special legislation clause of the Illinois Constitution. The treasurer asserts that sections 4—36 and 4—37 require drainage districts utilizing the county treasurer and collector as their own district treasurer and collector to provide for reimbursement of his expenses. He further asserts that the classification this creates is between districts that receive the services of the county treasurer,

who then have to pay, and the districts that do not receive services and therefore do not have to pay. Thus, the treasurer contends that it is a rational classification scheme which distinguishes between districts on the basis of whether services are provided or not.

We are unpersuaded by either of the district's contentions. The supreme court has held that the equal protection clauses of our constitution and of the United States Constitution do not prohibit the establishment of legislative classifications; nor do they require that all persons be treated uniformly. (*Davis v. Commonwealth Edison Co.* (1975), 61 Ill. 2d 494, 497, 336 N.E.2d 881, 883; *Friedman & Rochester, Ltd. v. Walsh* (1977), 67 Ill. 2d 413, 418, 367 N.E.2d 1325, 1330.) Further, legislative classifications enjoy a presumption of constitutionality (*McDonald v. Board of Election Commissioners* (1969), 394 U.S. 802, 809, 22 L. Ed. 2d 739, 745, 89 S. Ct. 1404, 1408), and a statutory classification will not be declared unconstitutional "if any state of facts reasonably may be conceived to justify it" (*Dandridge v. Williams* (1970), 397 U.S. 471, 485, 25 L. Ed. 2d 491, 502, 90 S. Ct. 1153, 1161, quoting *McGowan v. Maryland* (1961), 366 U.S. 420, 426, 6 L. Ed. 2d 393, 399, 81 S. Ct. 1101, 1105). The party which attacks the validity of a legislative classification assumes the burden of demonstrating that it is unreasonable or arbitrary. (*Illinois Coal Operators Association v. Pollution Control Board* (1974), 59 Ill. 2d 305, 311, 319 N.E.2d 782, 786; *People v. Palkes* (1972), 52 Ill. 2d 472, 477, 288 N.E.2d 469, 472.) It is not enough to simply say that different classes are legislatively created. *Friedman*, 67 Ill. 2d 413, 367 N.E.2d 1325.

■ The district has failed to meet its burden of demonstrating that the legislative classification is unreasonable or arbitrary. The district asserts only that it is unreasonable to permit county treasurers to charge actual costs for services provided to drainage districts when the treasurers are not authorized to charge other units of local government for the costs of services provided. No support is offered for this contention.

A distinction exists in this case which could reasonably justify the statutory classification. The amendments to sections 4—36 and 4—37 require drainage districts utilizing the county treasurer as their own district treasurer to reimburse the treasurer for the actual costs of his services. This classification creates a distinction between districts that elect to receive the treasurer's services and must reimburse the treasurer, and those districts that do not receive the treasurer's services and are not required to pay reimbursement. The legislature could have reasonably intended that the districts utilizing the services of the

treasurer should be required to bear the actual costs of the services the districts receive. Therefore, the legislative classification created by the amendments to the Code cannot be considered arbitrary or unreasonable merely because the drainage districts are required to reimburse the treasurer for services provided to the districts. Hence, we do not believe that the amendments to the Code contravene the dictates of equal protection of the law under either the constitution of this State or the constitution of the United States.

■ Nor do we believe that the amendments to the Code violate the constitutional prohibition against special legislation. (Ill. Const. 1970, art. IV, §13.) Article IV, section 13, of the Illinois Constitution of 1970 states:

> "The General Assembly shall pass no special or local law when a general law is or can be made applicable. Whether a general law is or can be made applicable shall be a matter for judicial determination." (Ill. Const. 1970, art. IV, §13.)

The supreme court has stated that violations of the special legislation prohibition are generally judged by the same standards employed under the equal protection clause (*McRoberts v. Adams* (1975), 60 Ill. 2d 458, 328 N.E.2d 321), though the provisions are not duplicates (*Grace v. Howlett* (1972), 51 Ill. 2d 478, 283 N.E.2d 474).

The definition of "special legislation" is set out by the supreme court in *Bridgewater v. Hotz* (1972), 51 Ill. 2d 103, 109-11, 281 N.E.2d 317, 321-22:

> "Our earlier decisions hold that: 'Laws are general and uniform when alike in their operation upon all persons in like situations.' (*City of Mt. Olive v. Braje* (1937), 366 Ill. 132, 135; *Bowers v. Glos* (1931), 346 Ill. 623.) In *Mathews v. City of Chicago* (1930), 342 Ill. 120, 128, and in *Latham v. Board of Education* (1964), 31 Ill. 2d 178, 183, this court said: 'The prohibition contained in section 22 of article 4 of the constitution against the passage of local or special laws in certain enumerated cases does not mean that every law shall affect alike every place and every person in the State but it does mean that it shall operate alike in all places and on all persons in the same condition. When referring to legislation the term "local" means laws relating to a portion, only, of the territory of the State and the term "special," laws which impose *** or immunity upon a portion of the people of the State. [Citations.]'
>
> &ast; &ast; &ast;
>
> *** A law is general not because it embraces all of the governed, but because it may, from its terms, embrace all who oc-

cupy a like position to those included."

The supreme court has since held that although article IV, section 13, of the 1970 Constitution (Ill. Const. 1970, art. IV, §13) enlarged the scope of judicial review of legislation, it required no change in the previous definition of when a law is general or special. (*Friedman*, 67 Ill. 2d 413, 367 N.E.2d 1325.) Hence, the prohibition against special legislation does not mean that a statute must affect everyone in the same way. It means simply that the law shall operate uniformly throughout the State and on all persons in like conditions. See *Friedman*, 67 Ill. 2d at 416, 367 N.E.2d at 1329 (and cases cited therein).

When the validity of a classification is challenged, the burden is on the party attacking it to demonstrate that it is arbitrary or unreasonable. (*Davis*, 61 Ill. 2d 494, 336 N.E.2d 881; *Palkes*, 52 Ill. 2d 472, 288 N.E.2d 469.) It is not enough to simply assert that different classes are legislatively created. *Friedman*, 67 Ill. 2d 413, 367 N.E.2d 1325.

In the instant case, we conclude that the amendments to the Code do not constitute prohibited special legislation for the reasons discussed in our analysis of the district's equal protection claims. The district has failed to demonstrate that the legislature acted unreasonably or arbitrarily in establishing the statutory scheme embodied by the amendments to the Code. On the contrary, the district merely asserts that the amendments create an arbitrary and unreasonable classification which imposes a burden on drainage districts that is not imposed on any other unit of local government for which the treasurer provides services. Thus, the district has failed to sustain its burden.

■ The treasurer contends on direct appeal that the trial court erred in finding his method of calculating actual costs was inappropriate under sections 4—36 and 4—37 of the Code.

We point out that the trial court found the formula used by the treasurer was a reasonable method of apportioning costs. However, the court did not believe that the legislature intended that a "formula method of apportioning costs" be used to calculate actual costs.

The treasurer asserts that the method used in computing a billing was done in accordance with general accounting principles, and that determining the cost of an activity is something the chief deputy auditor commonly does as an accountant. The treasurer asserts that there is nothing in the statutory history or case law which says that the only method for determining "actual costs" is by measuring the time an activity takes and that no case could be found which interprets the phrase "actual costs." The treasurer further asserts that there is nothing in the statutory history or case law which prohibits any rea-

sonable method from being used, even if that does result in different computations. It is the treasurer's position that all of the costs which went into the bill were "actually" incurred and paid by the county, *i.e.*, Meents' salary, her fringe benefits, the overhead associated with enabling her to do this work, and computer costs. We agree.

The legislature clearly intended the treasurer be reimbursed for the "actual costs for his services." (Ill. Rev. Stat. 1985, ch. 42, pars. 4—36, 4—37.) The formula used by the treasurer was a reasonable method of calculating the actual costs for the treasurer's services. The record reveals that the elements in the formula devised by Carol Wadleigh, the chief deputy auditor for Champaign County, included the salary and fringe benefits for the accounting clerk and general office overhead which included stationery, telephone, equipment maintenance, postage and computer costs. A charge for office space and building maintenance was not included in the overhead calculation but was calculated separately based on a per-square-foot charge that applied to the entire courthouse based on information from the Public Properties Department. All costs were then allocated by a transaction method. The transaction method was based on averaging the per-transaction costs for all drainage districts and subdistricts. The per-transaction costs were the same for each district and subdistrict for which the treasurer performed services. The treasurer's office was unable to allocate the actual time spent for a particular drainage district and that is why they came up with the transaction method of computing costs. All of the factors included in the formula are actual costs to the county of doing business. Accordingly, the trial court erred in finding the treasurer's method of calculating actual costs was inappropriate under sections 4—36 and 4—37 of the Code (Ill. Rev. Stat. 1985, ch. 42, pars. 4—36, 4—37).

For the foregoing reasons, the order of the trial court which held that the amendments to the Code were constitutional is affirmed. The trial court's order which found the treasurer's method of computing actual costs was inappropriate under the amendments to the Code is reversed. Pursuant to our authority under Supreme Court Rule 366(a)(5) (107 Ill. 2d R. 366(a)(5)) we therefore enter judgment in favor of the treasurer and against the defendants in the amount of $2,395.72 plus costs.

Affirmed in part; reversed in part.

GREEN, P.J., and LUND, J., concur.