**Mark BIRDSELL, Plaintiff–Appellant,**

v.

**BOARD OF FIRE AND POLICE COMMISSIONERS OF the CITY OF LITCHFIELD, et al., Defendants–Appellees.**

**No. 87–2101.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 20, 1988.

Decided Aug. 2, 1988.

---

Mary M. Albert, Brighton, Ill., for plaintiff-appellant.

Daniel R. Simmons, Heyl, Royster, Voekler & Allen, Springfield, Ill., for defendants-appellees.

Before CUMMINGS, CUDAHY and RIPPLE, Circuit Judges.

CUDAHY, Circuit Judge.

Mark Birdsell, the plaintiff in this section 1983 action, appeals from a directed verdict in favor of his former employer, the police department of the City of Litchfield, Illinois. The City fired Birdsell for failing to comply with its residency requirement. Birdsell's complaint alleged that he had been fired in violation of the equal protection clause, the due process clause and Illinois' common law protection against discharges that violate clear public policies. On May 4, 1987, the district court granted summary judgment to the City on the equal protection and retaliatory discharge claims, but held that Birdsell's due process claim raised "material issues of fact with respect to the fairness of the Board's procedures in this case." No. 85-3371, mem. op. at 5 (C.D.Ill. May 4, 1987). At the conclusion of Birdsell's evidence, the district court granted the City's motion for a directed verdict on the due process claim, finding that Birdsell had failed to present evidence that he had been deprived of a property interest without due process.

On appeal Birdsell contests both the directed verdict and the district court's implied rejection of his attempt at trial to replace the dismissed retaliatory discharge claim with a breach of contract claim. We find no error in the district court's treatment of the contract issue. However, we find that Birdsell's evidence, if believed, did make out a due process claim. We therefore reverse and remand on this issue.

## I.

A directed verdict is appropriate only if the evidence, viewed in the light most favorable to the nonmovant, fails to provide a basis upon which a jury could reasonably hold for the nonmovant. *Van Houdnos v. Evans*, 807 F.2d 648, 650 (7th Cir.1986); *Benson v. Allphin*, 786 F.2d 268, 279 (7th Cir.), *cert. denied*, 479 U.S. 848, 107 S.Ct. 172, 93 L.Ed.2d 109 (1986). All disputed issues of material fact, including questions of witness credibility, must be resolved in favor of the nonmoving party. *Tice v. Lampert Yards, Inc.*, 761 F.2d 1210, 1213 (7th Cir.1985). Our summary of the facts, therefore, focuses on the evidence that would allow a jury to resolve disputed issues in Birdsell's favor.

Birdsell was employed as a police officer for the City of Litchfield. Defendants concede that Illinois' statutory restrictions against firing civil servants "except for cause upon written charges and after an opportunity to be heard," Ill.Rev.Stat. ch. 24, para. 10–1–18 (1985), gave Birdsell a constitutionally protected property interest in his position. On July 27, 1983, the Board of Fire and Police Commissioners terminated Birdsell following a hearing on his residency. The Board found that Birdsell had violated Rule 53 of the Rules and Regulations of the Litchfield Police Department which stated: "Each policeman shall reside within the corporate limits of the City of Litchfield, Illinois." Violation of the residency requirement supplies grounds for dismissal.

Birdsell's due process claim centers on the notice he received concerning the July 27th meeting. On July 20th, as he arrived for his night shift, Birdsell was met by two police commissioners, Bachstein and Todt, who told Birdsell that they doubted his compliance with the residency requirement. Birdsell asked why he had not received written notice of the charges, but Bachstein replied that there were no charges, just a question as to Birdsell's residence, stemming from rumors that following his recent marriage Birdsell had moved to Brighton where his wife lived. The commissioners asked Birdsell to meet with the police chief and the commission one week later. Tr. at 17 (trial testimony of Mark Birdsell).

Birdsell appeared for the July 27th meeting alone and without documents or exhibits. He was wearing blue jeans and a T-shirt. Birdsell testified that he was surprised to find the room set up for a formal hearing. The commissioners sat at a raised dais with a tape recorder in front of them; Birdsell sat at a table facing the dais with a microphone in front of him. When Bachstein called the meeting to order, he informed Birdsell that charges had been filed against him. Birdsell asked why he had not been notified in writing of the charges against him and of the disciplinary hearing. The commissioners simply responded that Birdsell had been notified. They then asked him to respond to the charge that he had moved out of Litchfield. Birdsell stated that he lived with his parents at 1408 North Franklin in Litchfield and ate, slept and did his laundry there. He also stated that his vehicle registration, driver's license, voting registration card and firearms cards listed 1408 N. Franklin as his address. Tr. 27–34.

Unpersuaded by Birdsell's residency defense, the Board decided to terminate Birdsell. They based their decision on the police chief's claim that Birdsell had been spending his off-duty time outside of Litchfield, on reports that Birdsell had moved to Brighton to be with his wife and on information that Commissioner Todt had obtained from the post office and phone company indicating that Birdsell received mail and telephone service in Brighton. Birdsell was not given the opportunity to question the police chief or Commissioner Todt about the evidence they presented. Tr. 51–53.

At trial, Birdsell conceded that he had been aware of the residency requirement and that the police chief had asked him some twenty or thirty times about a rumor that he had moved out of Litchfield to live with his wife. Tr. at 67, 86. Birdsell also testified, however, that he knew that the Board was legally obligated to provide written notice of charges filed against em-

ployees and of the time and place of formal hearings on those charges. Tr. at 80–81; Ill.Rev.Stat. ch. 24, para. 10–1–18 (1985); Rules Governing the Board of Fire and Police Commissioners of Litchfield § 2.

At the close of the plaintiff's case, the district judge granted Litchfield's motion for a directed verdict, on the grounds that Birdsell knew his job would be on the line at the July 27th meeting and therefore received ample notice. Tr. at 239.

## II.

 Birdsell's due process claim rests on the Board's alleged failure to inform him that the July 27th meeting would be a formal termination hearing, which, under Illinois law, represented his only opportunity to demonstrate that he resided in Litchfield.[1] *See* Ill.Rev.Stat. ch. 110, para. 3–110 (1985). To assess the sufficiency of Birdsell's evidence, we must first clarify the requirements of due process in this context.

Due process requires that deprivations of life, liberty or property "be preceded by notice and an opportunity for hearing appropriate to the nature of the case." *Mullane v. Central Hanover Bank and Trust Co.*, 339 U.S. 306, 313, 70 S.Ct. 652, 656–57, 94 L.Ed. 865 (1950). In general, notice must be "reasonably calculated to apprise interested parties of the pendency of the action," *id.* at 314, 70 S.Ct. at 657, so that they can adequately prepare. *See Memphis Light, Gas and Water Div. v. Craft*, 436 U.S. 1, 14, 98 S.Ct. 1554, 1563, 56 L.Ed.2d 30 (1978). Notice must inform the person whose protected interests are threatened of an opportunity to present objections at "some kind of hearing" preceding the final deprivation of those interests. *Wolff v. McDonnell*, 418 U.S. 539, 577–78, 94 S.Ct. 2963, 2985–86, 41 L.Ed.2d 935 (1974).

In identifying the minimum requirements of due process, the Supreme Court balances public and private interests. *See,*

*e.g., Mathews v. Eldridge,* 424 U.S. 319, 334, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976); *Goldberg v. Kelly,* 397 U.S. 254, 263–66, 90 S.Ct. 1011, 1018–20, 25 L.Ed.2d 287 (1970); *Cafeteria & Restaurant Workers, Local 473 v. McElroy,* 367 U.S. 886, 895, 81 S.Ct. 1743, 1744–49, 6 L.Ed.2d 1230 (1961). In *Mathews* the Court described this analysis in the context of a challenge to hearing procedures:

> [O]ur prior decisions indicate that identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 334–35, 96 S.Ct. at 902–03.

The same balancing approach applies to evaluations of the adequacy of notice. In *Memphis Light,* the Court held that its "flexible" approach to due process, taking account of private interests, the potential for reducing erroneous deprivations and the costs of procedures needed to reduce errors, applies to evaluations of notice as well as of the procedures at the hearing. The majority criticized the dissent's efforts to "erect an artificial barrier between the notice and hearing components of the constitutional guarantee of due process." *Id.* 436 U.S. at 14 n. 15, 98 S.Ct. at 1563; *see also Tulsa Professional Collection Servs., Inc. v. Pope,* —— U.S. ——, 108 S.Ct. 1340, 1344–47, 99 L.Ed.2d 565 (1988) (sufficiency of notice depends on balance of state and individual interests); *Mullane,* 339 U.S. at 313–14, 70 S.Ct. at 656–57 (balancing state's interest in reducing costs of notice to beneficiaries of small, jointly managed

---

1. Although Birdsell also alleges that the hearing itself was deficient, his dissatisfaction with the hearing derives from the misleading notice he received, rather than from the procedures followed at the hearing. *See* Appellant's Brief at 17 ("The opportunity to respond to charges prior to termination could have been adequate had notice been meaningful.").

**208**

trusts against beneficiaries' "right to be heard," before opportunity to challenge trustees' action was foreclosed); *Wilson v. Health & Hosp. Corp.*, 620 F.2d 1201, 1214 (7th Cir.1980) ("elements to be included in the notice are to be tailored to the circumstances of the case and depend upon an appropriate accommodation of the competing private and governmental interests").

Applying the *Mathews* factors to the situation at hand, we note first that employees have substantial interests in retaining their positions. The Board does not dispute that the "for cause" protections that Illinois law confers on municipal employees create a constitutionally protected property interest. *See, e.g., Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). The Supreme Court has recognized that the property interest that is implicated when a public employer terminates an employee with legitimate expectations of job security is an especially weighty one. *See, e.g., Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 543, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985).

The second prong of the *Mathews* test requires us to consider the effectiveness of additional procedures in reducing the probability of an erroneous deprivation. The issue here is whether better notice, specifically a more accurate description of the Board's purposes, could have materially assisted an employee in Birdsell's position in presenting his side of the dispute. Two aspects of the situation in which Birdsell found himself heighten the importance of accurate notice. First, the residency requirement is an ambiguous one. Rule 53 of the Litchfield Police Department's rules and regulations stated that "[e]ach police-

man shall reside within the corporate limits of the City of Litchfield." The concept of residence is susceptible to numerous interpretations. *See* Annotation, *Validity, Construction and Application of Enactments Relating to Requirement of Residency Within or Near Specified Government Unit as Condition of Continued Employment for Policemen or Firemen*, 4 A.L.R. 4th 380, 405–07 (1981). The Supreme Court of Illinois has partially clarified the meaning of residence as a job qualification, equating "residence" in this context with "domicile," a concept defined principally in terms of an intent to maintain a permanent home. *Fagiano v. Police Bd.*, 98 Ill.2d 277, 287, 74 Ill.Dec. 525, 529–30, 456 N.E.2d 27, 31–32 (1983).[2] Intent, however, "may be manifested in ways too numerous to simply be listed, [and] an administrative board must look to all of the factors present." *Id.* at 287, 74 Ill.Dec. at 529, 456 N.E.2d at 31. Thus, in jurisdictions like Litchfield, which lack written guidance on the meaning of residency or a body of prior administrative decisions on point, a dispute over residency presents legal as well as factual questions. Effective preparation for a final termination hearing by an employee accused of nonresidence therefore requires both arguments about the proper interpretation of "residence" for purposes of Litchfield's rule and evidence to satisfy the appropriate standard. Preparations of this nature depend upon timely and accurate notice.

The absence under Illinois law of any opportunity to supplement the facts presented to administrative bodies also increases the risk of inadequate notice leading to an erroneous deprivation.[3] Employ-

---

**2.** *Fagiano* reversed a decision by the Illinois Court of Appeals that a city ordinance requiring Chicago civil servants to be "actual residents" was unconstitutionally vague. *Bastian v. Personnel Bd.*, 108 Ill.App.3d 672, 64 Ill.Dec. 213, 439 N.E.2d 142 (1982). While the Illinois Supreme Court held that the concept of actual residence was sufficiently determinate to satisfy the requirements of due process, the concept is still ambiguous enough to raise difficult issues of interpretation in particular cases.

**3.** Illinois law provides:

Every action to review any final administrative decision shall be heard and determined by the court.... The hearing and determination shall extend to all questions of law and of fact presented by the entire record before the court. No new or additional evidence in support of or in opposition to any finding, order, determination or decision of the administrative agency shall be heard by the court. The findings and conclusion of the administrative agency on questions of fact shall be held to be prima facie true and correct.
Ill.Rev.Stat. ch. 110, para. 3–110 (1987).

ees cannot challenge the factual bases for administrative decisions in post-termination judicial proceedings.[4] This limitation enhances the importance of accurate notice in averting erroneous firings.

Finally, we find that the Board had little or no interest in failing to provide accurate notice of the pretermination hearing. Inaccurate notice of termination hearings might postpone tense confrontations; it might also shorten termination hearings by discouraging employees from preparing to present a formal case. But any slight benefits that the City could realize through such a procedural shortcut are trivial in relation to the risk that employees who misunderstand the stakes of such meetings will fail to prepare arguments and evidence that could avert an erroneous firing.

■ This analysis of the *Mathews* factors demonstrates that notice of an informal discussion is not a constitutionally adequate substitute for notice of an employee's sole opportunity to contest the factual basis of charges that could lead to termination. Birdsell testified that the July 27th hearing was described to him as an informal discussion. His appearance without counsel, documentary evidence or witnesses is consistent with this claim. We believe that this was sufficient evidence to permit the jury to find that the plaintiff was not apprised adequately of the nature of the July 27th proceedings.

### III.

■ Birdsell also asserts that the directed verdict erroneously prevented the jury from deciding whether the Board violated his contractual rights under Illinois law by failing to abide by the termination procedures specified in the Police Department

manual and the Board of Commissioners' handbook. The City maintains that all of Birdsell's state law claims were dismissed on May 4, 1987, when the district judge entered a partial summary judgment disposing of the state law claims in Birdsell's complaint. Birdsell, however, contends that the summary judgment addressed only the retaliatory discharge claim explicitly stated in Count 1. According to Birdsell, a distinct contract claim should have been recognized by the district court on the basis of Birdsell's Rule 15(b) motion to conform the pleadings to the proof, entered at the conclusion of his evidence. *See* tr. at 189.

Rule 15(b) of the Federal Rules of Civil Procedure provides for liberal amendment of pleadings to allow district courts to decide all issues "tried by express or implied consent of the parties." *See Duckworth v. Franzen,* 780 F.2d 645, 649 (7th Cir.1985), *cert. denied,* 479 U.S. 816, 107 S.Ct. 71, 93 L.Ed.2d 28 (1986); *see also Cates v. Morgan Portable Bldg. Corp.,* 780 F.2d 683, 690 (7th Cir.1985) ("a complaint can be amended at any time, even in the court of appeals, to conform to the evidence"). However, this liberal policy does not extend so far as to allow a plaintiff to raise on appeal an issue never specifically identified at trial. "The test ... is 'whether the opposing party had a fair opportunity to defend and whether he could have presented additional evidence had he known sooner the substance of the amendment.'" *In re Prescott,* 805 F.2d 719, 725 (7th Cir.1986) (quoting *Hardin v. Manitowoc–Forsythe Corp.,* 691 F.2d 449, 456 (10th Cir.1982)); *see also* 6 C. Wright & A. Miller, *Federal Practice and Procedure* § 1494 at 247 (Supp.1987) ("[I]f it is uncertain whether the party opposing the motion to amend

---

4. This limitation distinguishes Birdsell from the plaintiffs in *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). There, the Court held that the pretermination hearing for employees with protected property interest in their jobs "need not be elaborate." *Id.* at 545, 105 S.Ct. at 1495. The pretermination hearing in *Loudermill* served only as "an initial check against mistaken decision"; it was followed by "a full post-termination hearing" required by Ohio law. *Id.* at

546, 105 S.Ct. at 1495. Thus, even if we were to accept the City's contention that the misleading notice that Birdsell described would have been adequate in the *Loudermill* context (a contention that is by no means clear from the Court's decision), we would be disinclined to extend that holding to the very different situation that prevails in Illinois, where employees are given only one chance to present the evidence in their favor.

had notice of the impleaded issue at the trial stage, the appellate court should render its decision in conformity with the issues relied upon by the lower court.").

Assessed against these principles, Birdsell's motion did not preserve his contract claim. The motion did not specify how the pleadings were to be amended; it contained no reference to the City's rules or the Board's handbook, which had been admitted into evidence for entirely unrelated reasons. Birdsell asserts that his introduction and use of the manual and handbook at trial "expanded upon" sections of his amended complaint that set forth "the essential elements of the breach of contract claim." Appellant's Brief at 27 (citing First Amended Complaint paras. 4, 5, 11, 14–16). However, there were no direct references at trial to the City's contractual obligations. Questions concerning the manual and handbook arose in connection with Birdsell's claim that his awareness of the rules requiring written notice of termination hearings reinforced Bachstein's assurance that the July 27th meeting would be an informal discussion. Tr. at 80–81, 162–64, 233. Moreover, the complaint makes no mention of the City's having violated its contractual obligations to Birdsell. Neither the pleadings nor the plaintiff's presentation of the evidence, therefore, adequately informed the district court that Birdsell's motion to conform the pleadings to the proof was intended to introduce a contract claim.[5]

### IV.

The district court erred in directing a verdict against Birdsell. Birdsell unquestionably knew before the July 27th meeting that his position was in jeopardy due to the Board's doubts about his residency. The evidence that he presented could have convinced a reasonable jury, however, that he did not receive notice that the July 27th meeting would be his termination hearing, his only opportunity under Illinois law to build a factual record in support of his residency claim. We therefore vacate and remand to the district court for further proceedings consistent with this opinion.

AFFIRMED IN PART, VACATED AND REMANDED IN PART.

---

**5.** At the time the motion was made, the district judge indicated that he would take it "under advisement." Tr. at 189. No ruling on this vague motion was ever given, however, except insofar as the directed verdict in the City's favor can be construed as an implied denial.

If Birdsell attempts to raise the contract claim on remand, the district court will be obliged to consider what preclusive effect, if any, to accord its earlier refusal to act favorably on Birdsell's motion. If that claim is not precluded, the court will have to consider whether the City will be unduly prejudiced by amendment of Birdsell's complaint. *See In re Prescott,* 805 F.2d at 725; *see also* 6 C. Wright & A. Miller § 1493 at 228 (Supp.1987). Because these issues might never arise—the parties could settle or Birdsell could decide to abandon the contract claim— and because these are the kinds of procedural issues that we prefer to take up with a district judge's considered views before us, we express no opinion about either of these questions.