912 F.2d 467
 Unpublished Disposition
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Melvin R. KURR, Plaintiff-Appellant,
v.
VILLAGE OF BUFFALO GROVE, et al., Defendants-Appellees.
 No. 89-2321.
 United States Court of Appeals, Seventh Circuit.
 Submitted Aug. 21, 1990.*
Decided Aug. 28, 1990.
 
 Before BAUER, Chief Judge, and EASTERBROOK, and PELL, Senior Circuit Judge.
 
 ORDER
 
 1
 Plaintiff-Appellant, Melvin R. Kurr, appeals from the district court's decision dismissing his cause of action and entering judgment in favor of the defendants. After reviewing the decision of the district court, the briefs, and the record, we have determined that it properly identified and resolved the issues before us on appeal; therefore, we affirm the decision of the district court for the reasons stated in the attached memorandum opinion.
 
 
 2
 On appeal, the Village of Buffalo Grove seeks fees and costs pursuant to 42 U.S.C. Sec. 1988 and under Rule 11 of the Federal Rules of Civil Procedure, arguing that the appeal was frivolous. Rule 11 is an inappropriate vehicle for obtaining sanctions in this court; however, Rule 38 of the Federal Rules of Appellate Procedure does provide for the imposition of damages and costs for taking a frivolous appeal. Therefore, we will analyze the request for fees and costs under Sec. 1988 and Rule 38.
 
 
 3
 In this case, the district court provided the appellant with a twenty-five page detailed analysis of why his allegations failed to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. In Hughes v. Rowe, 449 U.S. 5, 101 S.Ct. 173 (1980), the Supreme Court noted that a plaintiff in a civil rights action under Sec. 1983 " 'should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so.' " Id. at 15, 101 S.Ct. at 178-79 (quoting Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n, 434 U.S. 412, 422, 98 S.Ct. 694, 701 (1978)). In deciding to file an appeal after the district court's detailed and comprehensive disposition, Kurr elected to continue to litigate after his claim had clearly become frivolous; therefore, we impose sanctions pursuant to Sec. 1988 and Rule 38 of the Federal Rules of Appellate Procedure. The Village is ordered to file within fourteen days a statement of the costs and attorney's fees it has incurred in litigating this appeal.
 
 ATTACHMENT
 
 4
 IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN
 
 DISTRICT OF ILLINOIS
 EASTERN DIVISION
 No. 88 C 9051
 MEMORANDUM OPINION AND ORDER
 JAMES F. HOLDERMAN, District Judge:
 
 5
 Melvin R. Kurr filed this complaint pro se on October 25, 1988. Mr. Kurr's complaint alleges that the Village of Buffalo Grove (the "Village"), Chevy Chase Sewer and Water Company, Inc. ("Chevy Chase"), the Lake County Health Department ("LCHD"), and a number of individuals connected with these entities violated Mr. Kurr's constitutional rights when they terminated his water and sewer services. Each of the defendants has moved to dismiss Mr. Kurr's complaint pursuant to Fed.R.Civ.P. 12(b)(6).
 
 FACTS
 
 6
 In ruling on a motion to dismiss under Fed.R.Civ.P. 12(b)(6), the court must accept as true the well-pleaded facts in the complaint. Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232 (1984). In addition, the court must construe a complaint filed by a pro se plaintiff more liberally than a complaint drafted by a lawyer. Wilson v. Civil Town of Clayton, Ind., 839 F.2d 375, 378 (7th Cir.1988); Harris v. Fleming, 839 F.2d 1232, 1239 (7th Cir.1988). With these principles in mind, the court discerns the following facts from the complaint:
 
 
 7
 Mr. Kurr owns a home in Lake County, Illinois. During the summer of 1976 Mr. Kurr entered into an oral contract with defendant Chevy Chase. The contract permitted Mr. Kurr to connect to Chevy Chase's water and sewer mains and obligated Mr. Kurr to pay for water and sewer services at the rates established by the Illinois Commerce Commission ("ICC"). Mr. Kurr began to pay Chevy Chase for water and sewer services in October, 1976.
 
 
 8
 On November 2, 1987 the Board of Trustees for the Village of Buffalo Grove (the "Trustees")[1] passed Resolutions 87-53 and 87-54. Resolution 87-53 approved an agreement between the Village and Chevy Chase which obligated Chevy Chase to make certain improvements to its facilities (the "Improvement Agreement"). (Exhibits V and X). Resolution 87-54 approved an agreement between the Village and Chevy Chase by which Chevy Chase agreed to transfer to the Village certain of its assets, including its water and sewer systems (the "Transfer Agreement"). (Exhibits W and Y).[2] These resolutions and the related agreements authorized the Village to provide water and sewer services to homeowners who had previously been serviced by Chevy Chase.[3]
 
 
 9
 On November 3, 1987 Mr. Kurr received a letter from defendant William Johnson, the Vice President of Chevy Chase. (Exhibit C). The letter notified Mr. Kurr that the Village intended to disconnect Mr. Kurr's water and sewer service unless Mr. Kurr submitted a signed "Water and Sewer Agreement" to the Village. The "Water and Sewer Agreement" set forth a contract between the Village and a signatory homeowner whereby the Village agreed to provide water and sewer service to the homeowner's property and the homeowner agreed to pay for these services at rates established by the Village. (Exhibit E). On the same day, Mr. Kurr received a letter signed by Gregory P. Boysen, the Village's Director of Public Works. Mr. Boysen's letter certified that he left a copy of a "Water and Sewer Agreement" in Mr. Kurr's mailbox on that date. (Exhibit D).
 
 
 10
 The Village disconnected Mr. Kurr's water supply at 9:00 a.m. on November 5, 1987. Mr. Kurr protested the Village's action to Mr. Boysen by telephone, but Mr. Boysen nonetheless permitted Village employees to disconnect Mr. Kurr's residence from the water main. On the evening of November 5, 1987, Mr. Kurr telephoned Chevy Chase and left the message that the Village had disconnected his water supply. Mr. Johnson responded the following day that Chevy Chase no longer supplied sewer and water service to Mr. Kurr's subdivision.
 
 
 11
 After the Village disconnected Mr. Kurr's water supply, the LCHD began its attempts to convince Mr. Kurr to sign a Water and Sewer Agreement. On November 13, 1987, defendant Ted Byers, the District Supervisor for the LCHD, notified Mr. Kurr that if he did not reconnect to the Buffalo Grove water supply the LCHD would seek legal action through the Illinois State's Attorney's Office. (Exhibit G). In response, Mr. Kurr telephoned Mr. Byers and Steven Potsic, the Executive Director of the LCHD, and informed them that his home had been connected to the available water and sewer service since 1976 but was wrongfully disconnected by the Village when it took possession of Chevy Chase. Mr. Kurr memorialized this conversation in a letter dated November 17, 1987. (Exhibit H).[4]
 
 
 12
 The Village then attempted to disconnect Mr. Kurr's sewers from the Village's sanitary system. On December 12, 1987 Mr. Byers sent Mr. Kurr a certified letter warning him that the Village intended to dig up and disconnect Mr. Kurr's sewers. On the evening of December 17, 1987, several Village employees parked two or three Village of Buffalo Grove Public Works trucks in front of Mr. Kurr's house and began to flash the amber lights on top of the trucks. The employees then "began to run about Plaintiff's neighbors' back yards in a generally disruptive manner," asserting that they were trying to locate Mr. Kurr's sewer line. (Complaint, p 23). Mr. Kurr asserts that these actions were unnecessary because the employees knew fully well where Mr. Kurr's sewer line was located. (Complaint, p 24).
 
 
 13
 In February, 1988 Mr. Kurr lost the alternative water source he had obtained via his neighbor, Fred Abberton. In November, 1987 Mr. Kurr and Mr. Abberton entered into a contract for an interconnection with Mr. Abberton's water hookup. Mr. Abberton agreed to permit Mr. Kurr to run a hose from Mr. Abberton's outside hose bibb to Mr. Kurr's outside hose bibb. Mr. Kurr, in return, agreed to pay Mr. Abberton a "fair and reasonable amount" for the water he used. (Complaint, p 19). On February 6, 1988, however, the Village notified Mr. Abberton that, by providing water to Mr. Kurr, Mr. Abberton violated the Buffalo Grove Municipal Code as well as the Water and Sewer Agreement. Mr. Kurr therefore disconnected the hose at Mr. Abberton's request.
 
 
 14
 On February 22, 1988 the ICC received a "Petition for Termination" dated February 17, 1988 from defendant Howard Lang, Chevy Chase's attorney. The Petition requested the ICC to revoke Chevy Chase's Certificate of Public Convenience and Necessity. (Exhibit N). The ICC held hearings on April 7, June 7 and July 5, 1988 to determine whether the certificate should be revoked. Defendants William Johnson, Howard Lang, and William Raysa attended these hearings. On July 5, 1988 the ICC granted Chevy Chase's request for revocation.
 
 
 15
 Mr. Kurr sought assistance from the State of Illinois to correct the allegedly wrongful actions of the Village. On December 1, 1987 Mr. Kurr complained to the Illinois Attorney General's Office about the actions of the Village and its employees. However, the Attorney General's Office informed Mr. Kurr on January 22, 1988 that they had forwarded his complaint to the Illinois Department of Public Health (the "IDPH"). On April 13, 1988 IDPH officials informed Mr. Kurr that defendant Judith Munson was in charge of Mr. Kurr's complaint, but told him that she was out of town on business and could not be reached. On June 23, 1988 Ms. Munson finally notified Mr. Kurr that the IDPH could not take action against the Village for denying Mr. Kurr a supply of water.
 
 
 16
 Both the LCHD and the Village persisted in its attempts to convince Mr. Kurr to sign a Water and Sewer Agreement. On March 21 and 22, 1988 Mr. Byers telephoned Mr. Kurr three times and warned him that the Village intended to dig up his sewer if Mr. Kurr did not submit a signed agreement. In response, Mr. Kurr requested the telephone company to change his telephone number and remove it from the telephone listing. On June 14, 1988 Mr. Kurr received a letter from defendant Raysa, the Village attorney, informing him that Illinois law required Mr. Kurr to sign the Water and Sewer Agreement before the Village could provide water and sewer service. Mr. Kurr replied to Mr. Raysa by registered letter that the Village and its employees had acted unlawfully in disconnecting him from the available water system. Because Mr. Kurr refused to submit a signed agreement, the Village Board[5] voted in an Executive Session not to restore water service to Mr. Kurr's home.[6]
 
 
 17
 Mr. Kurr filed his complaint on October 25, 1988. Mr. Kurr's complaint alleges that defendants' actions violated Mr. Kurr's rights under the United States Constitution, art. I, Section 10 and Amendment 14; the Illinois Constitution, art. I, Sections 2 and 16; and Sections 1983, 1985(3) and 1986 of the United States Code, tit. 42. In addition, Mr. Kurr's complaint alleges that the Water and Sewer Agreement deprives him of property without just compensation in violation of the Fifth Amendment; violates his Fourth Amendment freedom from unreasonable searches and seizures; and deprives him of property without due process of law. Mr. Kurr's complaint also asserts state law causes of action against certain of the defendants.
 
 
 18
 The complaint names as defendants several individuals and entities:
 
 
 19
 1. Chevy Chase; Catherine Johnson and William Johnson, the President and Vice-President, respectively, of Chevy Chase; and Mr. Lang, Chevy Chase's attorney (collectively referred to in this opinion as the "Chevy Chase defendants");
 
 
 20
 2. The Village; Verna Clayton, the Village President; Janet Siraban, the Village Clerk; William Balling, Village Manager; Mr. Boysen; Mr. Raysa; William Brimm, Director of Finance; and the current and former members of the Board of Trustees (collectively referred to in this opinion as the "Village defendants");
 
 
 21
 3. The LCHD, Mr. Potsic, Mr. Byers, and Mr. Cunningham (collectively referred to in this opinion as the "Lake County defendants"); and
 
 
 22
 4. Judith Munson, the Staff Attorney for the IDPH.
 
 
 23
 Each of these groups of defendants have moved to dismiss Mr. Kurr's complaint.
 
 DISCUSSION
 
 24
 In deciding whether to dismiss a complaint under Fed.R.Civ.P. 12(b)(6), the court must view the allegations in the complaint in the light most favorable to the plaintiff. Hishon v. King & Spalding, 467 U.S. at 73, 104 S.Ct. at 2232. "A plaintiff need not set out in detail the facts upon which a claim is based, but must allege sufficient facts to outline the cause of action." Doe v. St. Joseph's Hospital, 788 F.2d 411, 414 (7th Cir.1986). A dismissal is improper unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99 (1957).
 
 A. Claims Directly Under the Constitution
 1. The Contracts Clause
 
 25
 Mr. Kurr complains that the Village violated the contracts clauses of the federal and state constitutions by passing Resolutions 87-53 and 87-54. See U.S. Const. art. I, Section 10; Ill. Const. art. I, Section 16. These constitutional provisions, which are essentially identical, prohibit a state from passing laws which impair the obligation of existing contracts. Mr. Kurr asserts that, by transferring the water and sewer facilities from Chevy Chase to the Village via Resolutions 87-53 and 87-54, the Village impaired the obligation of the contract which had existed between Mr. Kurr and Chevy Chase since 1976.
 
 
 26
 Despite its mandatory language, the prohibition contained within the contracts clause is not absolute. The Supreme Court has outlined a three-step inquiry to determine whether or not a law violates the contracts clause. See Energy Reserves Group v. Kansas Power & Light Co., 459 U.S. 400, 410, 103 S.Ct. 697, 703 (1983). First, the court must determine whether the ordinance in fact operates as a substantial impairment of existing contractual relationships. Second, the court must inquire whether the city has a significant and legitimate public purpose justifying the ordinance. Finally, the court must ask whether the effect of the ordinance on the contract is reasonable and appropriate given the public purpose behind the ordinance. Chicago Board of Realtors, Inc. v. City of Chicago, 819 F.2d 732, 736 (7th Cir.1987).
 
 
 27
 Mr. Kurr's complaint does not allege sufficient facts to state a claim under the contracts clause. First, the Improvement Agreement (which the Board approved by passing Resolution 87-53) did not affect in any way Chevy Chase's obligation to provide water and sewer service to Mr. Kurr. (Exhibit V). The Improvement Agreement merely obligated Chevy Chase to make certain improvements to its property. Second, the Transfer Agreement (which the Board approved by passing Resolution 87-53) contained the following clauses:
 
 
 28
 C. It is understood and agreed that the Village is not assuming any obligation of Chevy Chase to supply water or sewer service to Chevy Chase customers, current or potential.
 
 
 29
 .............................................................
 
 
 30
 ...................
 
 
 31
 * * *
 
 
 32
 E. It is understood and agreed that the Village does not incur any of Chevy Chase's contractual obligations to provide water and sewer service to Chevy Chase's customers, current or potential.
 
 
 33
 (Exhibit Y). The Transfer Agreement, by its terms, did not disturb Chevy Chase's obligations to provide water and sewer service to Mr. Kurr's property. Resolution 87-54 therefore did not impair the relationship which had existed between Chevy Chase and Mr. Kurr since 1976. The Board did not violate the contracts clause by passing these resolutions.
 
 
 34
 The Village did not impair Mr. Kurr's agreement with Chevy Chase by passing Resolutions 87-53 and 87-54. The contract was impaired, if at all, when Chevy Chase stopped providing water and sewer service to Mr. Kurr's property. Despite Mr. Kurr's allegations that Resolutions 87-53 and 87-54 impair the obligation of his contract with Chevy Chase (Complaint, p 48), nothing in either of these resolutions or the related agreements suggest that actions of the Village or its agents motivated Chevy Chase to cease its performance under the contract. Mr. Kurr's complaint therefore fails to state a claim under the contracts clause.
 
 2. Due Process
 
 35
 Mr. Kurr next alleges that the Village deprived him of due process in violation of the Fifth and Fourteenth Amendments when it disconnected his water and sewer hook-ups. In order to establish a denial of due process, Mr. Kurr must show (1) that he was deprived of a constitutionally protected life, liberty, or property interest, and (2) that the Village did not afford Mr. Kurr the process due him under the circumstances. Board of Regents v. Roth, 408 U.S. 564, 570, 92 S.Ct. 2701 (1972). The court will assume, for the purposes of this motion to dismiss, that Mr. Kurr has a protected property interest in sanitation services and a supply of potable water. See Memphis Light, Gas and Water Division v. Craft, 436 U.S. 1, 98 S.Ct. 1554, 1561 (1978).[7] Mr. Kurr's due process challenge depends on whether the Village deprived him of this interest without affording him the process he was due.
 
 
 36
 Read literally, the complaint presents a very limited due process challenge to the defendants' actions. Mr. Kurr alleges that the Village deprived him of due process by violating certain state and municipal laws. Specifically, he claims that the Village, its officers, and the Board of Trustees (1) provided water and sewer service outside its corporate limits without complying with Division 149 of the Illinois Municipal Code;[8] (2) disconnected his water and sewer service without complying with the Buffalo Grove Municipal Code, tit. 13, ch. 04, Section 250;[9] and (3) violated Principle I and Section 890.1510 of the Illinois Plumbing Code.[10] (Complaint, paragraphs 49-55).
 
 
 37
 Mr. Kurr cannot base a constitutional claim on these alleged violations of state and municipal law. The Seventh Circuit has made abundantly clear that a violation of state law is not a violation of the due process clause. See, e.g., Coniston Corp. v. Village of Hoffman Estates, 844 F.2d 461, 467 (7th Cir.1988); Kasper v. Board of Election Commissioners, 814 F.2d 332, 342 (7th Cir.1987) ("A district court has no supervisory powers and no authority to instruct the Board on how to follow state law."). Mr. Kurr therefore cannot state a claim under the Due Process Clause against the Village, its officials, or the Board of Trustees for violating state or local laws.
 
 
 38
 Reading the complaint liberally, on the other hand, it appears to the court that Mr. Kurr believes he was denied due process when the Village disconnected his water and sewer service without providing him notice and a hearing. The Supreme Court balances three factors when it identifies the minimum requirements for "notice and a hearing" under the due process clause:
 
 
 39
 First, the private interest that will be affected by the official action; second the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the governments' interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.
 
 
 40
 Mathews v. Eldridge, 424 U.S. 319, 335, 96 S.Ct. 893 (1976). See also Birdsell v. Board of Fire and Police Commissioners, 854 F.2d 204, 207 (7th Cir.1988).
 
 
 41
 Both the Village and Mr. Kurr have substantial interests in the operation of water and sewer services in Mr. Kurr's subdivision. Obviously, a municipality has a great interest in the methods by which it assumes control over and operates a water and sewer service for its residents and the residents of its unincorporated areas. At the same time, however, the Supreme Court has noted that residential homeowners have a substantial interest in continued water and sewer service to their homes. Cf. Memphis Light, 436 U.S. at 20, 98 S.Ct. at 1566 ("Although utility service may be restored ultimately, the cessation of essential services for any appreciable time works a uniquely final deprivation."). Because both the Village and Mr. Kurr have substantial interests at stake, the court must examine the process the Village afforded Mr. Kurr before it terminated his water and sewer services and consider whether additional procedures would have reduced the risk that this termination was wrongful.
 
 
 42
 Mr. Kurr cannot seriously contend that he did not receive notice of the Village's intention to disconnect his water supply and sanitation service. Mr. Kurr's complaint alleges that he received ten communications, either by telephone or through the mail, regarding the impending actions of the Village. (Complaint, paragraphs 8, 14, 15, 18, 21, 29, 30, and 37; Exhibit C, D, F, G, I, K, and S). Mr. Kurr therefore received adequate notice that the Village intended to disconnect his water and sewer service because he refused to sign a Water and Sewer Agreement.[11]
 
 
 43
 Nor can Mr. Kurr contend that an additional hearing would have furthered the interests of the due process clause. Due process requires that a municipality provide a resident with a meaningful opportunity to present their objection at some kind of pre-deprivation hearing. Birdsell, 854 F.2d at 207, quoting Wolff v. McDonnell, 418 U.S. 539, 577-78, 94 S.Ct. 2963, 2985-86 (1974). Mr. Boysen, who was at the time the Village's Director of Public Works, twice offered to discuss with Mr. Kurr his questions and concerns regarding the Water and Sewer Agreement. (Exhibits D and S). Mr. Kurr does not suggest that a meeting with Mr. Boysen was or would have been meaningless, or that some other kind of hearing would have been more fruitful. In addition, Mr. Kurr admits in his Response to Chevy Chase's Motion to Dismiss that, on January 27, 1989, he attended an "informational meeting" called by the Village for the purpose of discussing the intended transfer of Chevy Chase assets to the Village. (Response, p. 1). At this meeting, Mr. Kurr expressed his view that the Water and Sewer Agreement was illegal and informed the Village that he would not sign it. (Response, p. 2). Mr. Kurr's suggestion that the Village owed him more process than that which he receive is unpersuasive.
 
 
 44
 The court cannot conclude that the Village should have afforded Mr. Kurr additional procedures before disconnecting his water and sewer services. Mr. Kurr's complaint therefore fails to state a claim against the Village under the due process clause.
 
 
 45
 3. Constitutionality of the Water and Sewer Agreement
 
 
 46
 Mr. Kurr seeks a declaration that the Water and Sewer Agreement is unconstitutional under the Fourth, Fifth, and Fourteenth Amendments. After reading the complaint and the terms of the Water and Sewer Agreement, however, the court determines that the agreement is not constitutionally defective.
 
 
 47
 Despite Mr. Kurr's allegations, the agreement does not require Mr. Kurr to waive his rights under the Fourth Amendment in order to obtain water and sewer service. The Agreement requires homeowners to allow Village employees access to the homeowners' property during reasonable hours for the purpose of "reading, examining, repairing or removing" water meters. (Complaint, p 84; Exhibit E, p E). These activities are necessary to the operation of a water and sewer system. The agreement therefore neither requires nor permits unreasonable "searches" of Mr. Kurr's property within the meaning of the Fourth Amendment.
 
 
 48
 Nor does the agreement deprive Mr. Kurr of property without just compensation in violation of the Fifth Amendment. The "just compensation" clause forbids any government taking not for a public use without just compensation. See, e.g., Hawaii Housing Authority v. Midkiff, 467 U.S. 229, 231, 104 S.Ct. 2321, 2329 (1984). The clauses in the Water and Sewer Agreement which Mr. Kurr believes constitute a "taking" state that the homeowner's "curb box," "water meter," "curb stop," and other sewerage and water facilities become the property of the Village when the homeowner signs the agreement. This limited interference with Mr. Kurr's property is necessary for the efficient operation of the water and sanitation services in Mr. Kurr's subdivision. The agreement provides for a "taking" of property only for public use, and does not violate the "just compensation" clause of the Fifth Amendment.
 
 
 49
 Finally, the agreement is not unconstitutionally vague merely because it does not specify the type of water ("i.e. rain-water, river-water, sewer-water, contaminated water, etc.", Complaint, p 88)) the Village must provide to homeowners. Implied into every contract is an obligation of good faith. Mr. Kurr and the Village each understand that the purpose of the contract is to supply potable water and sanitation services to signatory homeowners. Mr. Kurr's remedy in the event the Village fails to provide potable water to his residence is for breach of contract. The agreement therefore is not unconstitutional under the Fourteenth Amendment.
 
 
 50
 The terms of the Water and Sewer Agreement do not violate the Fourth, Fifth or Fourteenth Amendments. Mr. Kurr's complaint therefore fails to state a claim for declaratory relief on the theory that the agreement is constitutionally defective.
 
 B. Civil Rights Violations
 
 51
 The remaining paragraphs of Mr. Kurr's complaint assert claims against the defendants under 42 U.S.C. Sections 1983, 1985(3), and 1986. The defendants have moved to dismiss each of these claims.
 
 1. Section 1983
 
 52
 Mr. Kurr alleges that the defendants deprived him of his rights under the First, Fourth, Fifth, Ninth and Fourteenth Amendments in violation of Section 1983. According to the complaint, the Village defendants, either alone or in concert, violated Mr. Kurr's constitutional rights by
 
 
 53
 1. passing and approving Resolutions 87-53 and 87-54 (Complaint, paragraphs 57, 79);
 
 
 54
 2. shutting off Mr. Kurr's water supply (Complaint, p 59) and convincing Mr. Abberton not to provide him with an alternative supply of water (Complaint, p 68);
 
 
 55
 3. sending him water bills and late notices (Complaint, paragraphs 71, 75, 81);
 
 
 56
 4. directing employees of the Village's Department of Public Works to search Mr. Kurr's property to locate his sewers (Complaint, p 66);
 
 
 57
 5. voting in an executive session to continue denying Mr. Kurr water (Complaint, p 71); and
 
 
 58
 6. mailing letters to Mr. Kurr and directing the LCHD to contact Mr. Kurr in order to encourage him to sign a Water and Sewer Agreement (Complaint, paragraphs 62, 64, 73).
 
 
 59
 In addition, Mr. Kurr alleges that the Lake County defendants participated with the Village in these deprivations by sending Mr. Kurr letters (Complaint, paragraphs 61, 64, 73); telephoning Mr. Kurr's home and leaving messages on his answering machine (Complaint, p 69); and leaving business cards at Mr. Kurr's home (Complaint p 62).[12]
 
 
 60
 In order to state a claim under Section 1983, Mr. Kurr must allege that (1) he was deprived of a right guaranteed by federal law or the United States Constitution (2) by an individual acting under color of state law. This court has already addressed Mr. Kurr's Fourteenth Amendment claim and concluded that Mr. Kurr's complaint does not allege sufficient facts to support the assertion that he was denied procedural due process. The court concludes below that each of the other constitutional violations which Mr. Kurr alleges supports his Section 1983 claim must be dismissed as well.
 
 
 61
 a. First Amendment
 
 
 62
 Mr. Kurr alleges that Mr. Boysen's letter requesting Mr. Abberton to disconnect Mr. Kurr's alternative water supply (Complaint p 26) and Mr. Byer's attempts to telephone Mr. Kurr and discuss the Village's plan to dig up Mr. Kurr's sewers (Complaint, paragraphs 29, 30) violated Mr. Kurr's freedom of expression. (Complaint, paragraphs 68, 69, 73, 77). In addition, Mr. Kurr alleges that Mr. Raysa's letter informing Mr. Kurr that his refusal to sign the "Water and Sewer Agreement" violated Illinois law (Complaint, p 37) and the Board of Trustees's executive session and subsequent decision not to provide Mr. Kurr with potable water (Complaint, p 40) deprived Mr. Kurr of his rights under the First Amendment.
 
 
 63
 Mr. Kurr has not alleged a deprivation of an interest protected by the First Amendment. The First Amendment freedom of speech applies only to protected forms of expression. Mr. Kurr's complaint does not allege sufficient facts from which the court can infer that the defendants' actions prohibited Mr. Kurr from engaing in some form of expressive activity. The allegations of Mr. Kurr's complaint therefore do not support his assertion that the defendants' actions violated the First Amendment.
 
 
 64
 b. Fourth Amendment
 
 
 65
 Mr. Kurr alleges that the Village and Lake County defendants violated his right to be free from unreasonable searches and seizures by turning of Mr. Kurr's water supply (Complaint paragraphs 11, 12), sending Mr. Kurr letters notifying him that the Village intended to dig up and disconnect his sewer unless he signed the Water and Sewer Agreement (Complaint, paragraphs 21, 37), requesting Mr. Abberton to disconnect Mr. Kurr's alternative water supply (Complaint, p 26), and telephoning Mr. Kurr to inform him that the Village intended to disconnect Mr. Kurr's sewers (Complaint, paragraphs 29, 30).
 
 
 66
 The Village did not violate the Fourth Amendment by sending Mr. Kurr letters and telephoning his home. State action constitutes a "search" within the meaning of the Fourth Amendment if the government infringes upon a "constitutionally protected reasonable expectation of privacy." Andree v. Ashland County, 818 F.2d 1306, 1314 (7th Cir.1987), quoting Katz v. United States, 389 U.S. 347, 360, 88 S.Ct. 507 (1967) (Harlan, J., concurring). Neither the Village nor the LCHD conducted a "search" when it attempted to communicate with Mr. Kurr via the telephone and through the United States Post Office. Mr. Kurr presumably consented to maintaining a mailbox and a telephone; he therefore must have expected telephone calls and letters from a variety of sources.
 
 
 67
 Nor did the Village violate the Fourth Amendment when it instructed its employees to disconnect Mr. Kurr's water supply. Contrary to Mr. Kurr's insistence, state action is not unreasonable merely because it violates state law. See Coniston Corp., 844 F.2d at 457. Moreover, even if Mr. Kurr has a legitimate expectation of privacy in his home and the areas surrounding it,[13] the complaint does not allege that the Village employees acted "unreasonably" when they turned off the water--e.g. by extending their invasion of Mr. Kurr's property beyond the intrusion necessary to turn off the water. The complaint does not allege sufficient facts to implicate either the Village or the Village employees in a Fourth Amendment violation.
 
 
 68
 c. Ninth Amendment
 
 
 69
 Mr. Kurr alleges that certain defendants violated his rights under the Ninth Amendment. The Ninth Amendment provides that "[t]he enumeration in the Constitution of certain rights shall not be construed to deny or disparage others retained by the people." The amendment preserves certain unarticulated fundamental rights which are implicit in the enumerated guarantees of the Bill of Rights. O'Donnell v. Village of Downers Grove, 656 F.Supp. 562, 569 (N.D.Ill.1987). It is not a substantive source of constitutional guarantees; rather, the Drafters included it to "avoid lowering, degrading or rejecting any rights which are not specifically mentioned in the Constitution." O'Donnell, supra; Grossman v. Gilchrist, 519 F.Supp. 173, 176 (N.D.Ill.1981), aff'd 676 F.2d 701 (7th Cir.1982).
 
 
 70
 Mr. Kurr's complaint does not allege that defendants' actions deprived him of any fundamental right guaranteed by the Ninth Amendment. Mr. Kurr does not have a fundamental right to an uninterrupted supply of water from the Village. Consequently, Mr. Kurr cannot support his Section 1983 claim on the allegation that the defendants deprived him of his rights under the Ninth Amendment.
 
 
 71
 Mr. Kurr's complaint does not allege sufficient facts to support his claim that the defendants' actions deprived him of a right secured by federal law or the United States Constitution. Accordingly, the complaint fails to state a claim under Section 1983.[14]
 
 2. Section 1985(3)
 
 72
 The complaint asserts that virtually all of the defendants as a group participated in a conspiracy to deprive Mr. Kurr of equal protection of the laws in violation of Section 1985(3).[15] However, Mr. Kurr cannot state a claim under Section 1985(3) for the loss of his water and sewer services. Section 1985(3) reaches only "racially-motivated" conspiracies, Stevens v. Tillman, 855 F.2d 394, 404 (7th Cir.1988) cert. denied --- U.S. ----, 109 S.Ct. 1339 (1989) (citations omitted), or conspiracies based on sex, religion, ethnicity, or political loyalty. Volk v. Coler, 845 F.2d 1422, 1434 (7th Cir.1988). Mr. Kurr does not allege in his complaint that any of the defendants conspired against him because he was a member of any of these classes. Therefore, Mr. Kurr's complaint fails to state a claim under Section 1985(3).
 
 3. Section 1986
 
 73
 Finally, Mr. Kurr maintains that certain defendants are liable to him under Section 1986 for failing to prevent the other defendants from violating his constitutional rights.[16] Liability under Section 1986 is derivative of Section 1985(3) liability; without a violation of Section 1985(3), there can be no violation of Section 1986. Grimes v. Smith, 776 F.2d 1359, 1363 (7th Cir.1985); Rodgers v. Lincoln Towing Service, Inc., 771 F.2d 194, 203 (7th Cir.1985). Mr. Kurr's complaint therefore fails to state a claim under Section 1986.
 
 C. Violations of State Law
 
 74
 Finally, Mr. Kurr's complaint purports to state a cause of action against certain of the defendants for breach of contract, interference with contractual relationships, libel, invasion of privacy, harassment, and common law duty. Because each of Mr. Kurr's federal claims must be dismissed for failure to state a claim upon which relief may be granted, the court relinquishes its pendent jurisdiction over Mr. Kurr's state claims as well. See Huffman v. Hains, 865 F.2d 920, 922-23 (7th Cir.1989).
 
 CONCLUSION
 
 75
 For the reasons stated in this memorandum opinion, Mr. Kurr's complaint is DISMISSED for failing to state a claim upon which relief may be granted.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Circuit Rule 34(f). Plaintiff-Appellant has filed such a statement and requested oral argument. Upon consideration of that statement, the briefs, and the record, the request for oral argument is denied and the appeal is submitted on the briefs and record
 
 
 [1]
 The Board consisted of Verna Clayton, Gary Glover, Melanie Kowalski, John Marienthal, William Reid, Patrick Shields, and Jordan Shifrin. Each of these individuals are named as defendants in this action
 
 
 [2]
 All exhibit references are to exhibits attached to plaintiff's complaint
 
 
 [3]
 These Resolutions and their related agreements were not signed by the Village President (Verna Clayton) and the Village Clerk (Janet Siraban), both of whom are defendants in this case, until June 27, 1988, nearly eight months after the Board approved them
 
 
 [4]
 The LCHD's attempts to contact Mr. Kurr continued despite Mr. Kurr's November 17, 1987 letter. On November 25, 1987 Jon Cunningham, an Associate Sanitarian for the LCHD, left his business card in Mr. Kurr's mailbox. Apparently, Mr. Kurr did not respond to the LCHD's communications
 
 
 [5]
 By this time, defendant Sidney Mathias had replaced Melanie Kowalski on the Village Board of Trustees
 
 
 [6]
 Mr. Kurr also began receiving bills for water and sewer treatment at his home. On May 17, 1988 Mr. Kurr received a bill for "Lake Cty Sewer Treat." (Exhibit P). Mr. Kurr objected to his bill in writing in a letter to Mr. Boysen dated June 3, 1988. On June 17 and August 18, 1988 Mr. Kurr received "Late Notices" from the Village for failing to pay the May 17, 1988 bill
 
 
 [7]
 Some doubt exists as to whether Mr. Kurr actually enjoyed a property interest in the Village's water and sewer services. In Craft, the Supreme Court held that a customer asserted a protected property interest under the due process clause in continued water and sewer service. 98 S.Ct. at 1561. Other cases have also concluded that a plaintiff has a protected property interest in continued water service. Freeman v. Hayek, 635 F.Supp. 178, 182 (D.Minn.1986); Bradford v. Edelstein, 467 F.Supp. 1361, 1376 (S.D.Tex.1979), and cases cited; Lamb v. Hamblin, 57 F.R.D. 58, 61 (D.Minn.1972). In this case, Mr. Kurr does not assert an interest in continued water service provided by the Village; he received his water and sewer service from Chevy Chase prior to the date his water service was discontinued. Thus, the question of whether Mr. Kurr has a protected property interest in the Village's utility services is not clear cut
 
 
 [8]
 Section 1 of this Division provides:
 The corporate authorities of a municipality may provide by ordinance for the extension and maintenance of municipal sewers and water mains, or both, in specified areas outside the corporate limits. Such service shall not be extended, however, unless a majority of the owners of record of the real property in the specified area petition the corporate authorities for the service.
 Ill.Stat.Ann. ch. 24, Section 11-149-1 (Supp.1988).
 
 
 [9]
 The court does not have a copy of the Buffalo Grove Municipal Code. Mr. Kurr alleges that the relevant provisions state:
 A. Service may be discontinued when any payment is past due. Service may not be resumed until the payment of all charges....
 B. Service shall not be discontinued until a minimum of three days' notice has been given to the person to whom the bills are mailed that the person will be given an opportunity to be heard as to why the service should not be discontinued.
 (Complaint, paragraphs 53, 54).
 
 
 [10]
 These provisions provide, in essence, that "every building intended for human habitation shall be provided with a potable water supply." (Complaint, p 55)
 
 
 [11]
 The court notes also that the documents which Mr. Kurr filed on October 5, 1988 to support his Motion for a Temporary Restraining Order indicated that Mr. Kurr received additional notice and another hearing well before November, 1987. According to these documents, Mr. Kurr first learned that the Village intended to assume operational control of Chevy Chase on January 9, 1987 via a letter mailed to him by Mr. Boysen. (Exhibit AC)
 
 
 [12]
 Mr. Kurr's complaint does not name Ms. Munson, Mr. Potsic, or the Johnsons in any of his Section 1983 allegations. Mr. Kurr names Chevy Chase and Mr. Lang in Paragraph 73, but neither Chevy Chase nor Mr. Lang were involved directly or indirectly in the communication which Mr. Kurr asserts in Paragraph 73 violated his constitutional rights
 
 
 [13]
 The court presumes that the gist of Mr. Kurr's Fourth Amendment claim is that the employees violated the Fourth Amendment by entering onto Mr. Kurr's property to turn off the water
 
 
 [14]
 Chevy Chase argues that it cannot be liable under Section 1983 because it is not a state actor. Because the complaint fails to allege a deprivation of Mr. Kurr's constitutional rights, the court need not address this issue
 
 
 [15]
 Mr. Kurr excludes Catherine Johnson, Steven Potsic, Judith Munson and John Cunningham from this alleged conspiracy
 
 
 [16]
 Mr. Kurr names LCHD, Mr. Byers, Mr. Boysen, the Village, Mr. Raysa, Mr. Balling, Mr. Brimm, Chevy Chase, Mr. Lang, and Ms. Munson as defendants under Section 1986